IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mark R. Hoop *et al.* | Case No. C-1-00-869 |
| Plaintiffs | District Judge Susan J. Dlott |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION |
| Jeffrey W. Hoop *et al.* | |
| Defendants | |

This matter comes before the Court on Defendants' Motion for a Preliminary Injunction (Doc. #21). Plaintiffs Mark Hoop and Lisa Hoop brought suit against Defendants Jeffrey Hoop and Stephen Hoop to invalidate Defendants' patent, but Defendants have moved for a preliminary injunction. For the reasons that follow, the Court hereby **GRANTS** Defendants' Motion (Doc. #21).

I.   **FACTUAL BACKGROUND**

Defendants Jeffrey Hoop and Stephen Hoop conceived of the idea for an eagle-shaped motorcycle fairing in 1998, but they did not have the requisite expertise in drawing and casting to create the three-dimensional representations necessary to complete a patent application. They therefore hired Lisa Hoop, a graphic designer, and Mark Hoop, a metal die caster, to make three-dimensional drawings and models of the eagle fairing concept, in order to complete a patent application. Jeffrey and Stephen are motorcycle enthusiasts. Mark and Lisa are not. Prior to their employment in this matter, neither Mark nor Lisa knew what a fairing was. There is now some dispute as to whether Lisa and Mark knew that Jeffrey and Stephen were employing them because they intended to apply for a patent. It is clear, however, that Mark and Lisa knew that Jeffrey and


EXHIBIT 1

Stephen were employing them in order to gain three-dimensional detail for their eagle fairing concept. At the start of this employment relationship, Mark and Lisa signed confidential non-disclosure agreements. Both Lisa and Mark worked on this project for a considerable amount of time.

Eventually, Jeffrey and Stephen photographed a die cast by Mark, and used these photos to apply for a patent on November 18, 1999. While Jeffrey and Stephen's application was pending, Mark and Lisa applied on March 28, 2000 for the identical patent. On August 1, 2000, the Defendants' design patent issued as No. 428,831. On September 26, 2000, Plaintiffs' design patent issued for the same design as No. 431,211.[1]

Plaintiffs filed suit in this Court on October 16, 2000, seeking to invalidate Defendants' patent. Defendants promptly counterclaimed. Defendants have subsequently moved the Court to enjoin Plaintiffs from infringing their patent.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to grant a preliminary injunction. When deciding whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000); see also Purdue

---

[1] The issuance of two patents for the identical design appears to have been the result of an error or oversight by the Patent Office. Defendants contend that the explanation for this error is that Plaintiffs failed to disclose all relevant information on their patent application. Defendants have requested that the Patent Office reexamine Plaintiffs' patent, and the Patent Office is currently doing so. Plaintiffs are actively contesting the reexamination.

2

Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1363 (Fed. Cir. 2001). In a patent case, if the movant makes "a clear showing that it [is] likely to prevail on the issues of patent validity and infringement, [the movant is] entitled to a presumption of irreparable harm." PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1566 (Fed. Cir. 1996).

### III. ANALYSIS

All parties agree that Plaintiffs' and Defendants' patents are identical. Infringement is therefore not at issue. The crux of disagreement concerns inventorship. If Plaintiffs are the true inventors of the patented design, Defendants' identical patent is invalid, in which case Defendants could not satisfy any prong of the preliminary injunction standard except irreparable harm. The Court concludes, however, that Defendants are the true inventors of the patented design.

"Conception is the touchstone of inventorship, the completion of the mental part of invention. ... Thus, the test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). Here, Plaintiffs concede that Defendants conceived the idea for eagle-shaped motorcycle fairings. Plaintiffs contend, however, that in the course of their employment they invented a new and different concept of an eagle-shaped motorcycle fairing, and that it is this, second design that both Plaintiffs and Defendants patented.

The record does not support Plaintiffs' theory. Plaintiffs' Exhibit One is the drawing that Defendants gave to Plaintiffs, representing their idea of the eagle-shaped fairing they hoped to develop. The drawing depicts a bird with downward-curved beak in profile, with its wings fully spread both above and below its body. Plaintiffs' Exhibit Two is Lisa Hoop's final drawing, which Plaintiffs contend is the patented design. This drawing is quite similar to Plaintiffs' Exhibit One,

3

although the bird in the second drawing has more detailed feathering and its body, including wings, is less triangular. These differences do not evidence an independent concept. Instead, the second drawing is a more refined version of the first. Of course, Jeffrey and Stephen hired Mark and Lisa precisely so that Mark and Lisa could refine Jeffrey and Stephen's drawing.

The Federal Circuit has explained that "others may provide services in perfecting the invention conceived by another without becoming an 'inventor' by operation of law. . . . [A]n inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1352 (Fed. Cir. 1998) (citations and internal quotation omitted). Here, Plaintiffs admit that Defendants conceived the idea for an eagle-shaped fairing, then hired Plaintiffs–who did not even know what a fairing was–to perfect that invention. Further, the strong similarity of the final product to the original rough draft Defendants presented to Plaintiffs demonstrates that the final product represents the perfection of the original idea. Nevertheless, Plaintiffs contend that because the final drawing of Lisa Hoop is more detailed than the original drawing of Stephen Hoop, the two drawings necessarily represent different inventions. To accept this contention would effectively nullify either the rule that mental conception (and not reduction to practice) is the touchstone of invention, or the rule that an inventor may employ the services of others to perfect an invention without thereby handing over his status as inventor. Thus, on this record, the Court concludes that Defendants are the true inventors of the patented design.[2]

---

[2] The parties disagree whether the Court should presume that Defendants are the true inventors of the design detailed in their patent. Plaintiffs recognize that such a presumption normally applies, but argue that it should not where, as here, two identical patents have issued. The Court need not resolve this doctrinal dispute because it concludes that Defendants have proven by more than a preponderance of the evidence that they are the true inventors.

4

All aspects of the preliminary injunction inquiry follow from this conclusion. First, Defendants have shown that they hold a valid patent. Second, all parties agree that Plaintiffs' product would infringe on Defendants' patent. Thus, Defendants have demonstrated a strong likelihood of success on the merits, as well as irreparable injury absent an injunction. Although issuing a preliminary injunction may cause substantial harm to Plaintiffs, the public interest favors judicial protection of valid patents from infringement. Considering these four factors together, the Court finds that a preliminary injunction is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for a Preliminary Injunction (Doc. #21).

IT IS SO ORDERED.

_____
Susan J. Dlott
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark R. Hoop *et al.*

    Plaintiffs

v.

Jeffrey W. Hoop *et al.*

    Defendants

Case No. C-1-00-869

District Judge Susan J. Dlott

ORDER

On February 28, 2001, the Court granted Defendants' Motion for a Preliminary Injunction (Doc. #27). Two matters concerning that decision are presently before the Court. First, to set forth the scope of the injunction in detail pursuant to Federal Rule of Procedure 65(d), the Court hereby enjoins Plaintiffs Mark R. Hoop and Lisa J. Hoop, together with their agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from (1) making; (2) using; (3) selling; (4) offering for sale; or (5) participating in the making, using, selling, or offering for sale; any motorcycle fairing guard setting forth or otherwise containing the design claimed in United States Design Patent No. 428,831 or any reasonably equivalents. The Defendants shall post a bond in the amount of $10,000.00 with the Clerk of the Court.



Second, in a telephone conference conducted March 1, 2001, Plaintiffs moved the Court to stay issuance of the preliminary injunction pending an appeal. Plaintiffs' primary argument in support of a stay is that a preliminary injunction may cause them substantial economic harm. In deciding to issue the preliminary injunction, however, the Court has already considered this argument. Plaintiffs have offered no reason for the Court to reconsider its decision. Thus, having examined the arguments of the parties, the Court hereby **DENIES** Plaintiffs' Motion for a Stay.

IT IS SO ORDERED.

*[signature]*
Susan J. Dlott
United States District Judge

# United States Court of Appeals for the Federal Circuit

01-1288

MARK R. HOOP and LISA J. HOOP,

Plaintiffs-Appellants,

v.

JEFFREY W. HOOP, STEPHEN E. HOOP,
and HOOPSTERS ACCESSORIES, INC.,

Defendants-Appellees.

---

DECIDED: January 30, 2002

---

Before MAYER, Chief Judge, LOURIE and DYK, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER. Dissenting opinion filed by Circuit Judge LOURIE.

MAYER, Chief Judge.

Mark R. and Lisa J. Hoop appeal the preliminary injunction entered by the United States District Court for the Southern District of Ohio enjoining them from acts which would constitute infringement of Jeffrey W. and Stephen E. Hoop's U.S. Design Patent No. 428,831. Hoop v. Hoop, No. C-1-00-869 (S.D. Ohio Feb. 28, 2001). Because the district court did not abuse its discretion in determining that Jeffrey and Stephen Hoop would likely succeed in sustaining the validity of their patent, we affirm.

## Background

In 1998, Jeffrey and Stephen Hoop ("Hoop brothers") conceived of a pair of eagle-shaped motorcycle fairing guards. Fairings are clear glass or plastic structures mounted above motorcycle handlebars to reduce wind drag. The eagle-shaped guards

EXHIBIT 3

attach to the fairings to prevent damage to the fairings if the motorcycle tips over. The Hoop brothers created sketches of the eagle design. (See figures 1 and 2, below.) Lacking drawing and casting expertise, they hired Lisa Hoop, a graphic designer, and Mark Hoop (their cousin and Lisa's ex-husband), a metal die caster, ("Mark and Lisa") to create detailed drawings and three-dimensional models for a patent application. Mark and Lisa signed nondisclosure agreements and prepared sketches and molds. (See figure 3, below.)




Figure 1           Figure 2           Figure 3

In November of 1999, the Hoop brothers applied for a design patent. After discussions over a manufacturing agreement between the parties failed, in March of 2000, Mark and Lisa also applied for a design patent, using the same drawings they had prepared for the Hoop brothers. The Hoop brothers' patent issued on August 1, 2000, as U.S. Design Patent No. 428,831, and Mark and Lisa's identical patent issued on September 26, 2000, as U.S. Design Patent No. 431,211. In October of 2000, the Hoop brothers asked to have Mark and Lisa's patent reexamined. During

reexamination, the examiner rejected Mark and Lisa's patent as anticipated by the Hoop brothers' patent. Mark and Lisa filed suit in the district court to invalidate the Hoop brothers' patent, and asserted infringement, unfair competition, and tortious interference with prospective economic advantage.

The Hoop brothers counterclaimed and moved to enjoin Mark and Lisa from making, using, selling, or offering for sale, any motorcycle fairing guard containing the design in their patent. The district court found that the Hoop brothers were the true inventors, and therefore held that they would likely succeed in sustaining the validity of their patent, and that Mark and Lisa were likely infringing. The court also held that the Hoop brothers had shown they would suffer irreparable injury absent an injunction. And it reasoned that although a preliminary injunction may cause harm to Mark and Lisa, the public interest favored protection of the patent. The court granted the Hoop brothers' motion for a preliminary injunction. Mark and Lisa appeal.

## Discussion

Under the patent laws, the district court has discretion to grant a preliminary injunction it deems reasonable. 35 U.S.C. § 283 (1994). We will affirm unless we find it to be an abuse of discretion, based upon an error of law, or a serious misjudgment of the evidence. Nutrition 21 v. United States, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed. Cir. 1991).

As the moving party, the Hoop brothers bore the burden of establishing their right to a preliminary injunction based upon four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction were not granted; (3) the balance of the hardships[;] and (4) the impact of the injunction on the public interest." Purdue Pharma L.P. v. Boehringer Ingelheim Gmbh, 237 F.3d 1359, 1363, 57 USPQ2d 1647, 1649 (Fed. Cir. 2001) (citing Polymer Techs. v. Bridwell, 103 F.3d 970, 973, 41

USPQ2d 1185, 1188 (Fed. Cir. 1996)). Mark and Lisa challenge only the likelihood of success prong.

The question here is whether the refinements made by Mark and Lisa rise to the level of inventorship, so as to displace the Hoop brothers as patentees. Mark and Lisa argue that they are the true inventors because they perfected the original design by adding detail to the design sketches and creating the three-dimensional molds. Accordingly, they assert that the trial court erred in finding the Hoop brothers likely to succeed in sustaining the validity of their patent. We do not agree.

Design patents may be obtained by "[w]hoever invents any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171 (1994). We apply the same standard of inventorship to design patents that we require for utility patents. In re Rousso, 222 F.2d 729, 731, 106 USPQ 99, 101 (CCPA 1955) (rejecting the assertion that a lesser standard of invention applies to design patents than to mechanical patents). An inventor under the patent laws is the "person or persons who conceived the patented invention." C.R. Bard, Inc. v. M3 Sys., 157 F.3d 1340, 1352, 48 USPQ2d 1225, 1232 (Fed. Cir. 1998). An inventor may then "use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460, 45 USPQ2d 1545, 1548 (Fed. Cir. 1998) (citing Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed. Cir. 1985)). The facts are undisputed that the Hoop brothers were the first to conceive of the eagle-shaped fairing guards, and brought the concept to Mark and Lisa for assistance. Thus in the absence of the inventive quality required for a patentable design on the part of Mark and Lisa, the Hoop brothers remain the true inventors.

One may not qualify as a joint inventor, or as here, a new inventor, by "merely assisting the actual inventor <u>after conception</u> of the claimed invention." <u>Ethicon</u>, 135 F.3d at 1460, 45 USPQ2d at 1548 (emphasis added). Minor differences between the prior art and the new claim will not suffice. <u>In re Zemon</u>, 205 F.2d 317, 320, 98 USPQ 223, 224 (CCPA 1953). The differences here must be substantial and not just superficial; the new design must contain an inventive concept. <u>Id.</u> The ultimate test for design-patent inventorship, like the test for anticipation and infringement, is whether the second asserted invention is "substantially similar" to the first. <u>Gorham Mfg. Co. v. White</u>, 81 U.S. (14 Wall.) 511, 528 (1872); <u>Payless Shoesource, Inc. v. Reebok Int'l Ltd.</u>, 998 F.2d 985, 990, 27 USPQ2d 1516, 1520 (Fed. Cir. 1993). Substantial similarity is a question of fact. <u>L.A. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1124, 25 USPQ2d 1913, 1918 (Fed. Cir. 1993).

The district court found that Mark and Lisa's drawing lacked an "independent," which we read as inventive, concept. The court summarized its improvements over the Hoop brothers' sketch as increased detailed feathering and an overall less triangular shape. Noting the strong similarity between the drawings, the court reasoned that Mark and Lisa merely refined and perfected the Hoop brothers' concept. Therefore, the two designs were not separate inventions. Mark and Lisa did remove the suggestion of the eagle's tail, see figure 2, but the two eagles have the same proportions, body size, orientation, three rows of feathers, head and beak shape, and eye placement. We agree that the trial court could permissibly conclude at the preliminary injunction stage that the second design was likely to be found to be merely a more refined version of the first. However, final resolution of this factual question must await a trial on the merits. The court's determination that the Hoop brothers are likely to be found to be the true

inventors and that they are likely to succeed in sustaining the validity of their patent is sustained.

## Conclusion

Accordingly, the order of the United States District Court for the Southern District of Ohio is affirmed.

## AFFIRMED