## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| Mark R. Hoop, et al., | ) | |
| | ) | Civil Action No. C-1-00-869 |
| Plaintiffs, | ) | |
| | ) | District Judge Susan J. Dlott |
| v. | ) | |
| | ) | |
| Jeffrey W. Hoop, et al., | ) | **FINAL PRETRIAL ORDER** |
| | ) | |
| Defendants. | ) | |

This action came before the Court at a final pretrial conference held on January 9, 2004, at 1:30 p.m., pursuant to Rule 16, Federal Rules of Civil Procedure.

I.    APPEARANCES:

For Plaintiffs:

> Alfred J. Mangels (0015981)
> 4729 Cornell Road
> Cincinnati, Ohio 45241
> Tel.: (513) 469-0470

> Timothy A. Magee, Esq. (0066023)
> 130 Sherman Drive
> Findlay, Ohio 45840
> Tel.: (419) 422-7393 (Findlay Office)
>     (419) 535-6830 (Toledo Office)

For Defendants:

> Stella B. House, Esq.
> STELLA B. HOUSE, ATTORNEY-AT-LAW, P.S.C.
> Post Office Box 422
> Manchester, Kentucky 40962-0422
> Tel.: (606) 598-1485

> Local counsel for Defendants: No local counsel is of record

II.  NATURE OF ACTION AND JURISDICTION:

    A.  This civil action is an interfering patents action for a declaration of the inventorship of an ornamental design for an eagle fairing guard for a motorcycle.  It involves two identical design patents that were issued by the United States Patent and Trademark Office.  One patent issued on August 1, 2002, to Defendants Jeffrey W. Hoop ("Jeffrey") and Stephen E. Hoop ("Stephen"), and one patent issued on September 26, 2002, to Plaintiffs Mark R. Hoop ("Mark") and Lisa J. Hoop ("Lisa"). This action also involves copyright registrations obtained by Mark and Lisa for the two-dimensional drawing of the eagle design and for the three-dimensional sculpture of the eagle design.  The interfering patents and the copyrights raise questions regarding patent and copyright infringement and other related questions.

    B.  The jurisdiction of the Court is invoked under Title 28, United States Code, Sections 1338 and 1367.

    C.  The jurisdiction of the Court is not disputed.

III.  TRIAL INFORMATION:

    A.  The estimated length of trial is 3 to 4 days.

    B.  Trial to a jury has been set for February 2, 2004, pursuant to the General Order on Trial Assignment.

IV.  AGREED STATEMENTS AND LISTS:

    A. General Nature of the Claims of the Parties

        1. Plaintiffs' Claims:

            That Lisa Hoop invented the two-dimensional features of the patented ornamental design in the form of an eagle, and that she is the author named in

Copyright Registration No. VAu 490-992 the subject matter of which is a line drawing of an eagle.

That Mark Hoop transformed Lisa Hoop's two-dimensional drawing of an eagle into a three-dimensional sculpture of an eagle, and that that three-dimensional sculpture is the subject matter of U.S. Patent No. Des. 431,211 that issued to Plaintiffs. That sculpture is also the subject matter of Copyright Registration No. VAu 494-540, which names both Lisa and Mark as authors.

That the three-dimensional eagle sculpture is composed of design elements that were conceived and put into tangible form solely by each of Lisa Hoop and Mark Hoop.

That Defendants Steven Hoop and Jeffrey Hoop did not contribute in any meaningful way either to the patented ornamental design, to the copyrighted line drawing, or to the copyrighted sculpture.

That Defendants Steven Hoop and Jeffrey Hoop conceived merely a broad concept, that of a motorcycle fairing guard in the form of an eagle, and that they presented Plaintiffs with sketches of a bird in flight that bear no resemblance to an eagle, and that are different in appearance from the patented and copyrighted designs.

That the copyrighted ornamental two-dimensional eagle design and the patented and copyrighted three-dimensional eagle sculpture do not embody design elements provided to Plaintiffs by Defendants, but are independent and distinct designs conceived and reduced to practice solely by Plaintiffs.

That as a part of the joint venture agreement, Defendants recognized that considerable effort would be required to bring the project to commercial fruition, that Defendants were not competent to provide those efforts, and that they therefore agreed that those efforts were to be performed by Plaintiffs.

That Defendants agreed to compensate Lisa Hoop for her time, and also to pay Mark Hoop for materials, travel, and incidental costs incurred in developing a die casting die to make die cast metallic eagles. Defendants also agreed to compensate Mark Hoop for his time in designing, developing, and testing a die casting die for die casting eagle fairing guards, provided he could successfully produce acceptable metallic parts.

Despite successfully demonstrating the ability to produce acceptable parts, neither of Plaintiffs was fully compensated by Defendants.

That in the absence of payment by Defendants to Mark Hoop for his uncompensated services in designing, constructing, and testing the eagle fairing guard die casting die and related auxiliary equipment, Mark Hoop is entitled to the exclusive ownership of that die and that related auxiliary equipment for producing die cast eagle fairing guards.

That Defendants infringed Plaintiffs' design patent and their sculpture copyright by manufacturing and offering for sale eagle fairing guards covered by Plaintiffs' design patent and by their copyright registration.

2. The Hoop Brothers' Claims:

The Hoop Brothers are experienced motorcycle enthusiasts, who have been involved with Harley Davidson motorcycles for over 20 years. In October

of 1998, the Hoop Brothers conceived of a design of motorcycle fairing guards consisting of a side view of an eagle with spread wings. A motorcycle fairing is a fiber-glass structure placed on the front of a motorcycle to reduce wind drag. Fairing guards are placed on the outer left and right protruding sides of a fairing. The guards protect these areas from being scratched while the motorcycle is in use or if it falls on its side while at rest. The Hoop Brothers' concept for the eagle design was based on Harley Davidson motorcycle owners' penchant for eagles and the belief that a market exists for an ornamental device to protect the fairing edges. The Hoop Brothers had drawings made of the eagle design conceived by them. The drawings consisted of side view eagles with their wings spread and featured a head and a beak. The wingspread took up most of the design. As the PTO requires either a three-dimensional drawing or a photograph of a physical model for a design patent application, the Hoop Brothers decided to have a graphic artist assist them in creating a more detailed drawing of their design. Lacking the expertise to create a more detailed drawing, the Hoop Brothers hired Lisa, who is an experienced graphic artist. After several consultations with the Hoop Brothers and their patent attorney regarding the correct angle, details, and dimensions of the design conceived and envisioned by the Hoop Brothers, Lisa created her final two-dimensional drawing for the Hoop Brothers. The Hoop Brothers paid Lisa at least $1,000.00 for her work. Lisa had no experience with motorcycles and had never conceived of any type of design for motorcycle fairing guards prior to being contacted by the Hoop Brothers. In late 1998, the Hoop Brothers retained Mark, an experienced builder of die casts, to build a metal die

cast to manufacture three-dimensional sets of the Hoop Brothers' eagle fairing guards. The Hoop Brothers paid Mark at least $13,000.00 for these services. Mark had no prior experience with street motorcycles or motorcycle parts and had never conceived of any type of design for motorcycle fairing guards prior to being contacted by the Hoop Brothers. Mark and Lisa knew that the Hoop Brothers were applying for a U.S. design patent for the eagle fairing guards design. In fact, many of the bills and invoices which Mark and Lisa sent to the Hoop Brothers in 1998 and 1999 for their technical assistance explicitly noted that they were performing services for the Hoop Brothers in order for the Hoop Brothers to submit their patent application to the PTO. Additionally, Plaintiffs knew the identity of the Hoop Brothers' patent counsel as early as late 1998. In fact, Lisa actually sent drafts of her drawings to and had various other communications with the Hoop Brothers' patent counsel in 1998 and 1999. The Hoop Brothers' patent counsel even gave the PTO's rules and standards for drawings to the Hoop Brothers, who forwarded them to Lisa to serve as a guide for her services. Further evidencing Mark and Lisa's agency and limited scope of employment are the confidential non-disclosure agreements that Mark and Lisa signed with the Hoop Brothers upon the Hoop Brothers' request in December of 1998. These agreements prohibited Mark and Lisa from disclosing the Hoop Brothers' idea for the motorcycle fairing guards design to any third party and using any information or ideas disclosed to them by the Hoop Brothers for any other purpose but to render technical and consulting assistance to the Hoop Brothers in connection with the design. On November 18, 1999, the Hoop Brothers filed their design

-6-

patent application. The Hoop Brothers submitted therewith photographs of eagle fairing guards manufactured for them by Mark. In anticipation of the PTO's issuance of the Hoop Brothers' patent, Mark and Lisa submitted several proposals to the Hoop Brothers regarding the manufacturing, packaging, and marketing of the Hoop Brother's product. In early 2000, the Hoop Brothers declined to employ Mark and Lisa in the manufacturing and fulfillment process. In response to the Hoop Brothers' refusal to hire Mark and Lisa, they filed their own design patent application on March 28, 2000. Their patent application is the same exact design that is the subject of the Hoop Brothers' patent application. Mark and Lisa turned over their entire files for their work to their patent counsel. These files contained various records and invoices, which indicated that the Hoop Brothers had contacted Mark and Lisa with their idea and paid them to make a detailed drawing and a physical model of it, and copies of the confidential non-disclosure agreements. Nonetheless, neither Mark nor Lisa nor their counsel disclosed the existence of the Hoop Brothers' patent application or the confidential non-disclosure agreements or their dealings with the Hoop Brothers and their patent counsel to the PTO. Mark and Lisa signed sworn declarations that they were the sole and original inventors of the eagle fairing guards design in their patent application. The PTO issued the Hoop Brothers' patent almost two month before it issued Mark and Lisa's patent. Nonetheless, Mark and Lisa failed to disclose the Hoop Brothers' issued patent to the PTO while their own patent application was pending. The eagle fairing guards design was the Hoop Brothers' concept, idea, and design. Mark and Lisa only became cognizant of the concept, idea, and

design after the Hoop Brothers hired them to work on this project. The Hoop Brothers have invested a substantial amount of their own energy and time and over $100,000.00, not including legal fees, developing the eagle fairing guards design and product. These sums include amounts expended for designing, manufacturing, advertising, and promoting the eagle fairing guards. The Hoop Brothers have been unable to manufacture and sell their product due to the fact that Mark has failed and refused to give them possession of the equipment, which they hired him to build for them, including, without limitation, the zinc die cast mold, mold shoes, insert steels, two bump dies (one for pre-1996 and one for post-1995), two station trim dies, multiple station fixture, and continued stamping die (the "Equipment."). Instead, Mark and Lisa violated the terms of their confidential non-disclosure agreements with the Hoop Brothers and converted the Hoop Brothers' concept and design and the Equipment to their own use for the purpose of infringing on the Hoop Brothers' patent.

B. Uncontroverted Facts

The following facts are established by admissions in the pleadings or by stipulations of counsel:

1. That United States Design Patent No. Des. 428,831, entitled "PAIR OF MOTORCYCLE FAIRING EDGE GUARDS," was issued by the U.S. Patent and Trademark Office on August 1, 2000, to defendants Jeffrey W. Hoop and Stephen E. Hoop from an application for patent filed by them with that agency on November 18, 1999.

2. That Jeffrey W. Hoop and Stephen E. Hoop represented to the Patent and Trademark

Office that they were the original, first, and joint inventors of the ornamental design patented in U.S. Design Patent No. Des. 428,831, that their names appear on their patent as the inventors, and that they jointly and severally own that patent.

3. That United States Design Patent No. Des. 431,211, entitled "PAIR OF MOTORCYCLE FAIRING EDGE GUARDS," was issued by the U.S. Patent and Trademark Office on September 26, 2000, to Plaintiffs Mark R. Hoop and Lisa J. Hoop from an application for patent filed by them with that agency on March 28, 2000.

4. That Mark R. Hoop and Lisa J. Hoop represented to the Patent and Trademark Office that they were the original, first, and joint inventors of the ornamental design patented in U.S. Design Patent No. Des. 431,211, that their names appear on their patent as the inventors, and that they jointly and severally own that patent.

5. That the ornamental design that is the invention claimed in United States Design Patent No. Des. 428,831 and the ornamental design that is the invention claimed in United States Design Patent No. Des. 431,211 are identical.

6. That United States Copyright Registration No. VAu 490-992 directed to a line drawing of a flying eagle names Lisa Hoop as the author of that work.

7. That United States Copyright Registration No. VAu 494-540 directed to a sculpture of a flying eagle names Mark Hoop and Lisa Hoop as the authors of that work.

8. That Mark Hoop manufactured, offered for sale, and sold die-cast metallic eagle fairing guards that corresponded with the ornamental designs shown in each of the design patents in issue.

9. That Plaintiffs each signed respective confidential disclosure agreements that were

presented to them by Defendants.

C. Contested Issues of Fact and Law

    1. Contested Issues of fact:

Who conceived and invented the design that is the subject of the parties' respective design patents and of Plaintiffs' copyrights?

Did Mark and/or Lisa breach their confidential non-disclosure agreements with the Hoop Brothers?  If "YES," then: What is the amount of damages to which the Hoop Brothers are entitled for Mark and/or Lisa's breaches of their confidential non-disclosure agreements with the Hoop Brothers?

Was there an agreement between Mark and the Hoop Brothers regarding services to be performed by Mark and compensation to be paid to Mark by the Hoop Brothers? If "YES," then: (1) Did Mark breach his contract to perform services for the Hoop Brothers? If "YES," then: (2) What is the amount of damages to which the Hoop Brothers are entitled for Mark's breach of the contract to perform services for the Hoop Brothers? (3) Are the Hoop Brothers entitled to possession of any and all of the equipment developed and/or constructed by Mark for the production and/or manufacturing of the eagle fairing guards?

Was there an agreement between the Hoop Brothers and Mark concerning compensation by the Hoop Brothers to Mark for his time and efforts in successfully demonstrating producibility of the fairing guards?  If "YES," then: (1) What were the terms of the agreement between the Hoop Brothers and Mark concerning compensation by the Hoop Brothers to Mark for his time and efforts in successfully demonstrating producibility of the fairing guards?  (2) Did Mark successfully demonstrate producibility of the fairing guards for the Hoop Brothers in

accordance with the terms of the agreement between the Hoop Brothers and Mark?  (3) Do the Hoop Brothers owe Mark any compensation for these services?

Did Mark and/or Lisa convert the Hoop Brothers' personal property to their own personal use to the detriment of the Hoop Brothers?  If "YES," then: What is the amount of damages to which the Hoop Brothers are entitled for Mark and/or Lisa's conversion of the Hoop Brothers' personal property to their own personal use?

Did the Hoop Brothers convert the personal property of Mark and/or Lisa to their own personal use to the detriment of Mark and/or Lisa?  If  "YES," then: What is the amount of damages to which Mark and/or Lisa entitled for the Hoop Brothers' conversion of Mark and/or Lisa's personal property to their own personal use?

Was there an agreement between the Hoop Brothers and Lisa concerning compensation by the Hoop Brothers to Lisa for preparing packaging artwork and web site artwork?  If "YES," then: (1) What were the terms of the agreement between the Hoop Brothers and Lisa concerning compensation by the Hoop Brothers to Lisa for preparing packaging artwork and web site artwork? (2) Did Lisa prepare packaging artwork and web site artwork for the Hoop Brothers in accordance with the terms of the agreement between the Hoop Bothers and Lisa?  (3) Do the Hoop Brothers owe Lisa any compensation for these services?

If Steve and Jeff are the true and sole inventors of the design claimed in the two patents, then the parties have stipulated that Mark and Lisa infringed on the Hoop Brothers' patent, leaving the following issues: (1) Did Mark and/or Lisa's actions and conduct constitute a willful infringement on the Hoop Brothers' patent? (2) What is the amount of damages to which the Hoop Brothers are entitled for Mark and/or Lisa's infringement of the Hoop Brothers' patent?

If Mark and/or Lisa conceived and invented the design that is the subject of their patent, did Steve and Jeff cause to be manufactured and offered for sale molded plastic eagle fairing guards that corresponded with the ornamental designs shown in Mark and Lisa's patent? If "YES," (1) Did the Hoop Brothers' actions and conduct constitute a willful infringement on Mark and/or Lisa's patent? (2) What is the amount of damages to which Mark and/or Lisa are entitled for the Hoop Brothers' infringement of Mark and/or Lisa's patent?

If Mark and/or Lisa conceived and invented the design that is the subject of their copyrights, then: Did Steve and/or Jeff infringe on their copyrights? If "YES," then: Are Mark and/or Lisa entitled to damages from the Hoop Brothers? If "YES," then: What is the amount of damages to which Mark and/or Lisa are entitled for the Hoop Brothers' infringement on their copyrights?

2. <u>Contested Issues of Law:</u> The contested issues of law in addition to those implicit in the foregoing issues of fact are:

1. Whether the Hoop Brothers or Mark and Lisa are the true and sole inventors of the design claimed, described, and shown in U.S. Patent Nos. Des. 428,832 and 431,211.

2. Which one of the two patents, U.S. Design Patent No. Des. 428,832 {the Hoop Brothers' patent) or 431,211 ("Mark and Lisa's patent") is valid and enforceable;

3. Which one of the two patents, U.S. Design Patent No. Des. 428,832 (the Hoop Brothers' patent) or 431,211 ("Mark and Lisa's patent") is invalid and unenforceable;

4. Whether the Director of the PTO should be directed to publish a notice in the Official Gazette of the PTO informing the public that the invalid and unenforceable patent is invalid and unenforceable;

5. Whether the relevant parties should be required to file a written disclaimer of any right in or to the designs encompassed by the invalid and unenforceable patent;

6. Whether the owners of the valid and enforceable patent are entitled to a permanent injunction against further infringement by the infringing parties and their agents, attorneys, employees, representatives, and servants, as well as any other entity or individual in active concert or participation with them;

7. Whether Lisa and Mark's copyrights regarding and/or relating to the eagle design, whether individually and/or jointly, including, without limitation, U.S. Copyright Registration No. VAu 490-992 and 494-540 are valid or invalid;

8. Whether the Hoop Brothers are entitled to a permanent injunction against further use of any and all copyrights regarding the eagle design, including without limitation, U.S. Copyright Registration No. V Au 490-992 and 494-540, by Mark and Lisa, together with their agents, attorneys, employees, representatives, and servants, as well as any other entity or individual in active concert or participation with them;

9. Whether Mark and Lisa are entitled to a permanent injunction against further use of the copyrighted eagle designs, including without limitation, U.S. Copyright Registration No. V Au 490-992 and 494-540, by the Hoop Brothers, together with their agents, attorneys, employees, representatives, and servants, as well as any other entity or individual in active concert or participation with them;

10. Whether the Hoop Brothers are entitled to possession, or in the alternative, destruction of any and all of the equipment designed, developed, and/or constructed by Mark and/or Lisa for the production and/or manufacturing of the eagle fairing guards;

11. Whether Mark and/or Lisa are entitled to possession, or in the alternative, destruction of any and all of the equipment designed, developed, and/or constructed by or for the Hoop Brothers for their production and/or manufacturing of the eagle fairing guards;

12. Whether the Hoop Brothers are entitled to possession or, in the alternative, destruction of any and all products made, produced, and/or manufactured with the relevant equipment;

13. Whether Lisa and/or Mark are entitled to possession or, in the alternative, destruction of any and all products made, produced, and/or manufactured by the HoopBrothers with the relevant equipment;

14. Whether the Hoop Brothers' case is an exceptional case under 35 U.S.C. §285;

15. Whether Mark and Lisa's case is an exceptional case under 35 U.S.C. §285;

16. Whether the Hoop Brothers are entitled to an award equal to the amount of all legal fees and expenses incurred by them in the legal proceedings regarding these matters, whether said legal fees and expenses were incurred in legal proceedings before the PTO, this Court, or the U.S. Court of Appeals for the Federal Circuit;

17. Whether Mark and Lisa are entitled to an award equal to the amount of all legal fees and expenses incurred by them in the legal proceedings regarding these matters, whether said legal fees and expenses were incurred in legal proceedings before the PTO, this Court, or the U.S. Court of Appeals for the Federal Circuit; and

18. Whether costs should be assessed against either Plaintiffs or Defendants.

D. <u>Witnesses</u>

    1. In the absence of reasonable notice to opposing counsel to the contrary, Plaintiffs will call, or will have available at the trial:

**Lisa Hoop**, who will testify concerning the initial discussions between the parties, what she received from Defendants, what efforts she expended in arriving at the patented and copyrighted design, and the results of her efforts. She will also testify as to an agreement concerning her services, and whether she has been fully compensated for those services.

**Mark Hoop**, who will testify concerning the initial discussions between the parties, what he received from Defendants, what efforts he expended in arriving at the patented and copyrighted design, and the results of his efforts. He will also testify as to an agreement concerning his services, and whether he has been fully compensated for those services.

**H. Bradley Hammond**, who will testify as an expert witness concerning the initial eagle sketches provided by Defendants, concerning Lisa Hoop's eagle drawing, concerning differences between the initial sketches and Lisa Hoop's drawings, and concerning whose creative efforts are reflected in the patented design and in the copyrighted drawing and sculpture.

**Richard Luther**, who will testify as an expert witness concerning the reasonable costs that are involved in the design, construction, and testing of a die casting die and auxiliary equipment needed to manufacture a metallic fairing guard having the patented and copyrighted eagle design, given only a two-dimensional drawing of the design that was to be embodied in the die cast fairing guard.

2. In the absence of reasonable notice to opposing counsel to the contrary, Defendants will call, or will have available at the trial:

**Jeffrey W. Hoop** will testify concerning the facts relating to the Hoop Brothers' claims and defenses to Mark and Lisa's claims.

**Stephen E. Hoop** will testify concerning the facts relating to the Hoop Brothers' claims and defenses to Mark and Lisa's claims.

**Bill Robinson** will testify about the Hoop brothers' contacts with Mark and Lisa concerning the eagle fairing guards and his conversations with Mark and his parents, Bobby and Betty Hoop, concerning Mark and Lisa's infringement on the Hoop Brothers' patent.

**Clista Robinson** will testify about witnessing Mark and/or Lisa's execution of the confidential disclosure agreements between the Hoop Brothers and Mark and/or Lisa.

**Jim Chadwick** will testify about witnessing Mark and/or Lisa's execution of the confidential disclosure agreements between the Hoop Brothers and Mark and/or Lisa.

**Christina McLeod** will testify concerning her personal knowledge about the facts in dispute and issues involved in this civil action.

**Junior Mosely**, a representative of Accro-Cast Corp., will testify concerning his personal knowledge about Mark and/or Lisa's infringement upon the Hoop Brothers' patent.

A representative of Schulte Metal finishing will testify concerning his personal knowledge about Mark and/or Lisa's infringement upon the Hoop Brothers' patent.

**Joyce Keniston**, a representative of Webster Packaging, will testify concerning any and all conversations with Mark and/or Lisa and/or other matters within her personal knowledge about the eagle fairing guards.

**Mark Hershberger**, a graphic artist, will offer expert opinion testimony concerning the respective designs of eagles in flight that were prepared by the parties of this civil action. His testimony will be relevant to the factual questions involved in connection with the determination of the inventorship of the ornamental design that is the subject matter of the design patents in issue in this civil action. He will state his professional opinion based upon a review of the relevant drawings and state that while they do differ in amount of detail, they are all: (A) Eagles; (B) In flight; (C) Somewhat stylized; (D) Proportionate in area coverage; (E) Oriented in the same direction; (F) Have three distinct feather rows; (G) Have a head in profile facing left with one eye showing; and (H) Have wings in top view. He will testify that these commonalities coupled with the fact that he has personally produced numerous similar wildlife drawings for sculptures in relief, as well as moldings of sculptures and castings to be used in commercial and non-commercial ventures, lead him to concluded that Lisa's final drawing is simply a refinement of the concept put forth in the Hoop Brothers' original drawings. Having personally created from his own measurements two of the original designs, as concept sketches for the Hoop Brothers for their motorcycle fairing guards idea, and having given them advice to proceed on to the probable manufacturer for input prior to refinement of these drawings, he will testify that

he has no doubt that Lisa's final drawing would not exist without the original drawings.

**Lisa Hoop** is expected to testify concerning the statements contained in the transcript of her deposition in this civil action.

**Bobby Hoop** is expected to testify concerning his personal knowledge about Mark and Lisa's infringement on the Hoop Brothers' patent.

**Betty Hoop** is expected to testify concerning her personal knowledge about Mark and Lisa's infringement on the Hoop Brothers' patent.

3. There is reserved to each of the parties the right to call such rebuttal witnesses as may be necessary , without prior notice thereof to the other party.

NOTE: *Only witnesses listed in the Pretrial Order or identified in accordance with paragraph 3 above will be permitted to testify at the trial, except witnesses called solely for purpose of impeachment or for good cause shown.*

E. Expert Witnesses

Parties are limited to the following number of expert witnesses, whose names have been disclosed to the other side.

Plaintiff:

H. Bradley Hammond

Richard Luther

Defendant:

Mark Hershberger

Counsel have attached a résumé of each expert's qualifications as a part of Appendix A hereto.

F.  Exhibits

A listing of the exhibits expected to be offered during the course of the trial are listed in the attached appendices as follows:

Appendix B - Joint Exhibits

Appendix C - Plaintiffs' Exhibits

Appendix D - Defendants' Exhibits

G.  Depositions

No testimony is expected to be offered by deposition/videotape.

H.  Completion of Discovery

Discovery has been completed, except that the Hoop Brothers request a ruling from the Court regarding Plaintiffs' objections to some of the Hoop Brothers' interrogatories to Plaintiffs.

I.  Miscellaneous Orders

None.

V.  MODIFICATION

This Final Pretrial Order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice.  Such modification may be made by application of counsel or on motion of the Court.

VI.  JURY INSTRUCTIONS

Two copies of requests for jury instructions, including interrogatories or special verdict forms, as well as a 3½" computer disc in any version of WordPerfect from 5.1 through 8.0, shall be submitted to the Court's chambers at least six (6) business days prior to the commencement of trial.  In addition, the original jury instructions shall be filed in

the Clerk's Office at least six (6) business days prior to the commencement of trial. There is reserved to counsel the right to submit supplemental requests for instructions during trial, or at the conclusion of the evidence, but only on matters that cannot be reasonably anticipated. Each instruction should be on a separate 8.5" x 11" sheet of paper identified as "Plaintiffs' (Defendants') Requested Instruction No. ___." All instructions must contain a citation of authority upon which counsel relies. The original of the request for special instructions must be filed with the Clerk of Court's Office, prior to presentation to the Court.

VII.    SETTLEMENT EFFORTS

Counsel for the parties have considered and communicated regarding possible settlement of the controversy, but no agreement concerning mutually acceptable terms of a settlement were agreed upon.

VIII.    ADDITIONAL ACTION TAKEN

The foregoing stipulations and statements were amended at the final pretrial conference as follows:

IT IS SO ORDERED.

_____
SUSAN J. DLOTT
United States District Judge

_____
Counsel for Plaintiffs

_____
Counsel for Defendants

## APPENDIX A

RÉSUMÉS OF QUALIFICATIONS OF EACH EXPERT WITNESS

A. PLAINTIFFS' EXPERT WITNESSES:

Professor H. Bradley Hammond - Professor Hammond has since 1969 been a member of the faculty in the School of Design, within the College of Design, Architecture, Art, and Planning of the University of Cincinnati and he is presently an Associate Professor of Industrial Design. He was awarded by the Minneapolis College of Art & Design the degree of Bachelor of Fine Arts in 1966, and was awarded by the University of Wisconsin the degree of Master of Science in Design in 1968. His Curriculum Vitae is attached

Richard A. Luther - Mr. Luther is presently Director of Engineering with Yoder Industries, Inc., of Dayton, Ohio. Yoder Industries produces aluminum and zinc die castings. Mr. Luther has over 40 years experience in the designing, building, estimating, and optimizing of die cast molds for production purposes.

B. DEFENDANTS' EXPERT WITNESSES:

Mark Hershberger is a graphic artist in Ocala, Florida. Details regarding his qualifications, background, and experience are set forth in his Curriculum Vitae, which is attached hereto.

## APPENDIX B

### JOINT EXHIBITS

JX1    Undated eagle sketch provided to Plaintiffs by Defendants

JX2    Undated eagle sketch provided to Plaintiffs by Defendants

JX3    Undated eagle sketch provided to Plaintiffs by Defendants

JX4    Confidential Disclosure Agreement between the Hoop Brothers and Mark

JX5    Confidential Disclosure Agreement between the Hoop Brothers and Lisa

JX6    Sketches of eagles made by Lisa Hoop, photographs of eagles obtained by Lisa
       Hoop, and final line drawing of eagle made by Lisa Hoop (total of 17 pages)

JX7    Lisa Hoop's letter to Steve Hoop, dated December 16, 1998

JX8    Lisa Hoop's letter to Jeff Hoop, dated 12/22/98, with attachment

JX9    Lisa Hoop's Invoice dated 2/1/99

JX10   Lisa Hoop's letter to Jeff Hoop, dated April 21, 1999

JX11   Lisa Hoop's fax to Jeff Hoop, dated 4/27/99

JX12   Lisa Hoop's letter to Jeff Hoop, dated May 5, 1999

JX13   Lisa Hoop's letter to Jeff Hoop, dated June 3, 1999

JX14   Lisa Hoop's letter to Hoopster's. dated November 3, 1999

JX15   Lisa Hoop's Invoice dated 12/9/99

JX 16  United States Design Patent No. Des. 428,831

JX 17  Patent and Trademark Office file history for United States Design Patent No. Des.
       428,831

JX18   United States Design Patent No. Des. 431,211

JX 19  Patent and Trademark Office file history for United States Design Patent No. Des.
       431,211.

JX20   United States Copyright No. VAu 490-992, dated 4/3/00

B-1

JX21    United States Copyright No. VAu 494-540, dated 4/3/00

JX22    Fine-Tech Tooling invoice dated April 21, 1999

JX23    UCC Financing Statement

JX24    Security Agreement

JX25    Cognovit Note With Warrant of Attorney

JX26    Eagle Fairing Dresser Installation

JX27    Photographs of eagle fairing guard die casting die and related equipment

JX28    Harley-Davidson motorcycle fairing

JX29    Plaintiffs' eagle fairing guard product and package

JX30    Defendants' eagle fairing guard product and package

JX31    Defendants' Declaration and Power of Attorney, dated 11/15/99

JX32    Harley-Davidson Eagle Fairing Decals, 1995

JX33    Notice of Intent, dated October 23, 1998 (2 pages)

JX34    Letter dated 1/4/00 to Jeff Hoop from Saliwanchik firm

JX35    Manufacturing Agreement dated 2/10/2000 (3 pages)

JX36    Copy of voided check No. 1278 issued by Jeffrey W. Hoop to Fine-Tech Tooling

## APPENDIX C

PLAINTIFFS' EXHIBITS

PX1    Invoices and travel expense summary reflecting Mark Hoop's expenditures related to the design and construction of eagle fairing guard tooling (total of 19 pages)

PX2    Target Container Co. quotation dated March 9, 2000

PX3    Pro-Tec electroplating Invoice No. 2205

PX4    Target Container Co. drawing No. PC#5987

PX5    Clairson Industries sales confirmation dated 7/12/00

PX6    Clairson Industries packing list dated 9/12/2000

PX7    Clairson Industries packing list dated 9/16/2000

PX8    Clairson Industries packing list dated 9/29/2000

PX9    Clairson Industries packing list dated 9/29/2000

PX10   Clairson Industries Invoice No. 2556, dated 10/3/00

PX11   Clairson Industries Invoice No. 2527, dated 9/29/00

PX12   Clairson Industries quotation No. 7908, dated 3/14/00

PX13   Clairson Industries quotation No. 7909, dated 3/14/00

PX14   Clairson Industries letter dated April 14, 2000

PX15   Hoopsters check to Clairson Industries dated 4/19/2000

PX16   Clairson Industries Invoice No 1053, dated 4/25/00

PX17   Clairson Industries Invoice No. 1910, dated 7/21/00

PX18   Clairson Industries Tooling Progress Report, Jul 14 '00

PX19   Clairson Industries letter dated August 29, 2000

PX20   Receipt for Cashier's Check payable to Clairson Industries, dated 11/20/00

PX21   Fine-Tech Tooling costs to date, dated 5- 28-99

PX22   Fine-Tech Tooling Hoopers costing sheet, dated 11-05-99

PX23   Tooling Costs Note from Mark Hoop to Jeff Hoop, dated 11-05-99

## APPENDIX D

### DEFENDANTS' EXHIBITS

DX1    "Poor Man's Patent" (a certified letter from Jeffery W. Hoop to Jeffery W. Hoop, dated October 27, 1998)

DX2    Letter From Timothy Magee to Jeffery W. Hoop and Stephen E. Hoop, dated March 10,2000

DX3    November, 2001, issue of Thunder Press magazine

DX4    Bills for legal services rendered for the Hoop Brothers, including legal fees and expenses incurred in legal proceedings before the PTO, this Court, and the U.S. Court of Appeals for the Federal Circuit

DX5    Joyce Keniston's Confidential Disclosure Agreement

DX6    Jeff Hoop's Fax to Lisa Hoop (12-22-98)

DX7    Fax from The Webster Group to Lisa Hoop (11-01-99)

DX8    Quotation from The Webster Group to Lisa Hoop (11-02-99)