IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| Mark R. Hoop, et al., | ) | |
| | ) | Civil Action No. C-1-00-869 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan J. Dlott |
| Jeffrey W. Hoop, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' CONTEMPT MOTION

Defendants have moved the Court for an Order finding Plaintiffs in contempt of the Court's Order entered on February 12, 2004, ordering Plaintiffs to relinquish possession of the Equipment and the eagle fairing guards in their possession or under their control.

### I.

### PLAINTIFFS HAVE SUBSTANTIALLY COMPLIED WITH THE ORDER

As is apparent from the allegations made by Defendants in their motion, and the exhibits attached to that motion, Defendants have in their possession all the production-related Equipment that was required to be provided to them. Additionally, Defendants have received a number of the eagle fairing guards that were in Mark Hoop's possession or under his control at the time he became aware of the Order.

The "Equipment" as defined in the Order is such "equipment designed, developed, and/or constructed by [Plaintiffs] or any third party for them or any of their companies *for the production and/or manufacturing of the eagle design motorcycle fairing*

*guards.*" (emphasis added). Clearly, the Order is directed to production-type equipment that is needed to produce or to manufacture the fairing guards. It is not directed to auxiliary or ancillary tools that were only utilized as intermediate aids in the course of making production-type Equipment and not actually utilized to make fairing guards.

Exhibits 1 and 2 attached to Defendants' motion identify the equipment and fairing guards of which Jeffrey Hoop took possession on February 13, 2004, after Plaintiffs were unable to post the required bond by 5:00 PM on February 12, 2004. Although Defendants have broadly asserted they have not received all of the Equipment, they have not particularized what it is that they should have received but did not.

Attached hereto and forming part of this Memorandum is the Declaration of Mark R. Hoop, dated March 3, 2004, (hereinafter "Declaration") which sets forth in detail what occurred after the jury's verdict had been rendered on February 11, 2004. It also identifies all the production-type Equipment he had produced and had available at the time he received actual notice of the contents of the Order, and that was applicable to the production and/or manufacturing of the eagle fairing guards.

Based upon the statements included in the Declaration, and also based upon information contained in Exhibits 1 and 2 attached to Defendants' motion, it appears that the only items identified in paragraph 2 of the Order that were not received by Defendants were items that were not in existence on the date the Order was entered. All the then-available Equipment identified in that paragraph was included among the items Jeffrey Hoop received, as evidenced by the exhibits to Defendants' motion and as evidenced by the attached Declaration.

As noted in the Declaration, the die cast mold should have included the mold shoes and the insert steels, which are necessary parts of the mold. Defendants have not asserted

that those items were not part of the die cast mold they received. Additionally, Jeffrey Hoop took possession of the multiple station holding fixture and the single right side bump die that Mark Hoop had produced. Moreover, with respect to the two-station trim die, no such die was ever actually made – it had only been a proposed piece of equipment. And the temporary, contoured stamping die that had been utilized for pressing the adhesive tape pieces to the inner surfaces of the fairing guards was an inexpensive, plastic tool that had failed late in the year 2000 and was never replaced. Further, two additional bump dies that had been made for bending the fairing guards to fit the curvature of fairings of later model Harley-Davidson motorcycles also failed in use, because they also were temporary, plastic items. They also were not replaced. Thus, the Declaration and Defendants' Exhibits 1 and 2 support the position that Defendants have received all the then-available Equipment for producing eagle fairing guards.

With regard to the wax renderings, the Declaration states in paragraphs 6 and 7 that the wax renderings and their bases were discarded the evening of February 11, shortly after the jury's verdict was rendered, which was before the February 12 Order was entered and before Mark Hoop received notice of the Order on February 13. As also stated in the Declaration, until actually seeing a copy of the Court's February 12 Order during the morning of February 13, Mark Hoop was unaware that those items were to be turned over to Defendants, because the wax renderings were never considered by anyone to be production-type Equipment for producing or manufacturing fairing guards. Instead, they were ancillary tools of an intermediate nature and were only used as an adjunct for making the final die casting mold that actually produces the eagle fairing guards. In that respect, the wax renderings are not utilized to produce fairing guards, and they are no different from other ancillary tools and other items that were used in the course of making the die casting mold, such as sketches, drawings, calculation sheets, computers,

3

copiers, scanners, hammers, screw drivers, wrenches, and the like, as well as the machine tools that were utilized for cutting the metal from which the die casting mold was made. Once the mold was completed and in existence, those ancillary tools and items, which included the wax renderings, were not needed for producing fairing guards because they had served their purpose as merely adjuncts for making the final die casting mold, and were only utilized during the die construction process. Thosee ancillary tools and items were not and are not production-type Equipment.

It is very significant to note that the wax renderings were never considered to be production Equipment, either by Plaintiffs or by Defendants. Mark Hoop's tooling cost sheet furnished to Defendants in November 2000 (PX23) did not list the wax renderings as equipment. Nor did Defendants include the wax renderings among the equipment they listed in their proposed Manufacturing Agreement (JX35). And Mark Hoop's final, proposed Security Agreement (JX24) also did not include the wax renderings among the equipment to be covered by that agreement. Clearly, throughout the course of their dealings none of the parties regarded as production-type equipment the wax renderings or any of the other tools and other ancillary items utilized during the die construction process to make the final die casting mold.

## II.
## IMPOSSIBILITY OF COMPLIANCE IS A DEFENSE

The law is clear that the inability to comply with an Order is a defense against a charge of contempt.

> In a civil contempt proceeding such as this, of course, a defendant may assert a present inability to comply with the order in question. *Maggio v. Zeitz, supra*, at 75-76; *Oriel v. Russell*, 278 U.S. 358, 366 (1929). While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving

party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production. *McPhaul v. United States*, 364 U.S. 372, 379 (1960); *Maggio v. Zeitz, supra*, at 75-76; *Oriel v. Russell, supra*, at 366. See also *United States v. Fleischman, supra*, at 362-363. Thus while Rylander could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was then unable to comply because he lacked possession or control.
*United States v. Rylander*, 460 U.S. 752, 757 (1983).

Mark Hoop's Declaration shows that he did not disobey the Order – he complied with it to the extent he could at the time he became aware of its contents. Based upon the Supreme Court's statement of the law applicable to a contempt allegation, Mark Hoop's inability to comply with the Order is a valid defense to an assertion of contempt as to the wax renderings and the other items that had failed during use and were not replaced.

Defendants took possession of the Equipment and eagle fairing guards that Mark Hoop was aware of and had available at the time he became aware of the contents of the Order dated February 12, 2004. And because he had not received actual notice of the Order until February 13, 2004, there has been no violation of the Order. *See, e.g., Reed v. Cleveland Board of Education*, 607 F.2d 749 (6th Cir. 1979) ("The notice of a judicial order upon violation of which a contempt finding may properly be based is such notice as would clearly tell a reasonable person what he is required to do or abstain from doing."). Until Mark Hoop had received notice of the contents of the Order, he was unaware that the wax renderings were included as items he was to turn over to Defendants. And because he was then unaware of the contents of the Order, he had no notice that would be sufficient to cause him to know that the non-production-Equipment wax renderings were included among the production Equipment that was to be turned over to Defendants.

## III.

## PLAINTIFFS DEMONSTRATED GOOD FAITH COMPLIANCE

The Mark Hoop Declaration and the exhibits that accompanied Defendants'
motion for contempt demonstrate that Defendants received from Mark Hoop that production
Equipment he then had in his possession or under his control. Defendants also received the more
than 100 eagle fairing guards that he found in his shop at the time he became aware of the
contents of the Order.

As further cogent evidence of Mark Hoop's good faith, he promptly notified the
Court upon discovering a number of additional eagle fairing guards that he had not found during
an earlier search (see Declaration, paragraph 11 and Exhibit A attached to the Declaration).

The severe remedy of contempt should not be found to be applicable under the
circumstances discussed herein. In that regard, the Federal Circuit has said:

> Civil contempt is one mechanism through which a court may enforce its
> proper powers, and is recognized as a severe remedy. In such a civil contempt
> proceeding, the movant has the heavy burden of proving violation of the District
> Court's order by clear and convincing evidence. *KSM Fastening Systems, Inc. v.
> H.A. Jones Co.*, 776 F.2d 1522, 1524, 227 U.S.P.Q. (BNA) 676, 677 (Fed. Cir.
> 1985). If there is a fair ground of doubt as to the wrongfulness of the defendant's
> actions said to be in contempt, the District Court should not entertain the civil
> contempt proceeding or find contempt. *MAC Corp. of America v. Williams
> Patent Crusher and Pulverizer Co.*, 767 F.2d 882, 885, 226 U.S.P.Q. (BNA) 515,
> 517 (Fed. Cir. 1985).
> *Preemption Devices Inc. v. Minnesota Mining & Manufacturing Co.*, 803 F.2d
> 1170, 1173 (Fed. Cir. 1986)

The facts discussed above demonstrate that there was substantial compliance with
the Order based upon what was available at the time Mark Hoop received notice of the contents
of the Order. And that compliance was good faith compliance. The facts also show that there is

at least "a fair ground of doubt" of non-compliance, and therefore a contempt finding is not warranted.

### CONCLUSION

The facts clearly show that Mark Hoop did not violate the Order. By making available to Defendants all the then-available Equipment and eagle fairing guards, Mark Hoop demonstrated his good faith efforts to comply with the Order after he learned of its entry. Further evidence of his good faith is provided by his prompt disclosure to the Court of his discovery of additional, previously-undiscovered eagle fairing guards. Accordingly, Defendants' motion for contempt is not well taken, and it should be denied.

Respectfully submitted,

Alfred J. Mangels (0015981)
4729 Cornell Road
Cincinnati, Ohio 45241
Tel.: (513) 469-0470
Trial Attorney for Plaintiffs

Of Counsel:
Timothy A. Magee, Esq.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' CONTEMPT MOTION, with the attached DECLARATION OF MARK HOOP, was served upon counsel for Defendants this 15th day of March 2004, by facsimile transmission and by mailing a copy of the same by first-class mail, postage prepaid, in an envelope addressed as follows:

> Stella B. House, Esq.
> STELLA B. HOUSE, ATTORNEY-AT-LAW, P.S.C.
> Post Office Box 422
> Manchester, Kentucky 40962-0422

_Mar. 15, 2004_
_____
Date

_Alfred J. Mangels_
_____
Alfred J. Mangels
Trial Attorney for Plaintiffs

8