IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| Mark R. Hoop, et al., | ) | |
| | ) | Civil Action No. C-1-00-869 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan J. Dlott |
| Jeffrey W. Hoop, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF MARK R. HOOP

The undersigned, Mark R. Hoop, hereby states as follows:

1. That to the best of my recollection, I did not actually see the Court's Order that is dated February 12, 2004, relating to the production of the cast parts and related equipment, until the next day, February 13, 2004. In the early afternoon of February 12 my counsel, Timothy A. Magee, while I was present, called the Court from my shop to request a facsimile copy of the February 12 Order, which was needed for the purpose of attempting to obtain a cost estimate for the bond that had been set by the Court. At the time he and I left my shop later that afternoon, the Order had not yet been received. I did not return to my shop until late the next morning, February 13, at which time I discovered the Order in the incoming message tray of my shop facsimile machine.

2. That the zinc die cast mold made by me for die casting eagle design fairing guards was from its completion by me in 2000 continuously in the custody of Accro-Cast Corp., the company who did the actual die casting of parts, until it was picked up by Jeffrey Hoop, which I understand occurred the afternoon of February 13, 2004;

3. That the zinc die cast mold when last seen by me in the custody of Accro-Cast had included as necessary parts thereof the mold shoes and the insert steels, and I have no information to indicate that those parts of the die cast mold were not present and included as a part of it at the time it was picked up by Jeffrey Hoop;

4. That the multiple station holding fixture (which was incorrectly identified by Defendants as two separate pieces of equipment – a "multiple station fixture" and a "secondary operation holding fixture" - whereas only one such fixture was made by me, and I believe those two names were used to identify one and the same piece of equipment) and the single right side bump die that I produced, were delivered by me to the office of Alfred J. Mangels in the early afternoon of February 13, 2004, and I understand they were picked up by Jeffrey Hoop later that afternoon;

5. That there is not now and never was in existence a two station trim die, which was an intended production tool that was proposed by me for removing excess material from the cast parts and was proposed to be built by me after Defendants entered into a suitable agreement concerning payment terms for the die and related equipment that I produced, and would have been built thereafter and at a time before volume production of the parts by me was intended to begin;

6. That until mid-morning of February 13, 2004, when I first saw the Court's February 12, 2004, Order, I was unaware that the wax renderings and the plastic bases upon which the wax renderings were adhered were to be turned over to Defendants, because those items are not considered to be pieces of production equipment, they are not necessary to produce die cast eagle fairing guards, which are produced using the die cast mold, nor were they ever intended to be pieces of production equipment – they were ancillary, intermediate elements that were only necessary and only utilized during the die casting mold construction process to define the three-dimensional outer surfaces of the eagles, and to thereby enable the formation of the internal molding surfaces of the

die casting mold. When the eagle-shaped mold surfaces (which have been referred to as the "insert steels") that are included in and are a part of the internal structure of the die casting mold had been formed and installed in the final version of the die casting mold, the wax renderings had served their purpose and were no longer necessary – they were only needed as an intermediate element that was used in developing the inner molding surfaces of die casting mold during the mold construction process;

7. That late in the evening of February 11, 2004, shortly after the jury delivered its verdict and before the Court's Order of February 12, 2004, because the wax renderings were not necessary pieces of equipment inasmuch as they were not needed to produce the parts because the completed die casting mold was in existence, and because I was then unaware of any requirement to turn the wax renderings over to Defendants, they were discarded and are no longer available;

8. That the temporary contoured stamping die I built in 2000, which was not intended to be a mass-production tool and which I had built from plastic as an inexpensive prototype tool for the sole purpose of pressing onto the inner surfaces of the fairing guards the adhesive tape pieces used to attach the guards to a fairing, had failed while in use and was discarded around the end of the year 2000 and was not replaced;

9. That two additional bump dies that I had made in an effort to try to bend the die cast guards to a somewhat different curvature for the later model Harley-Davidson motorcycles were also temporary items and they were made of plastic. They failed in use because I discovered that when they were used as I had intended they were not strong enough to bend the metallic die cast fairing guards, and they broke and were discarded around the latter part of the year 2001 as unsuitable for the purpose and were not replaced;

10. That in the early afternoon of February 13, 2004, I delivered to the office of my counsel,

Alfred J. Mangels, the eagle fairing guards I was able to locate that day (which I later learned was a total of 117 individual guards, some of which were finished but most of which were not), which I understand were picked up by Jeffrey Hoop at the time he picked up from Mr. Mangels the secondary holding fixture and the right side bump die;

11. That during the next day, February 14, 2004, while I was in a second storage area that I had not previously checked, I discovered an additional 28 eagle fairing guards that I had not found during my previous search, and because both Mr. Mangels and Mr. Magee were not in town at the time, I notified the Court of my finding by facsimile on February 15, 2004, a true copy of which notification is attached as Exhibit A;

12. That Mr. Mangels now has the additional 28 fairing guards in his office and they are therefore available for pickup by Defendants or their representative;

13. That after diligent further searching I have found no additional equipment and no additional eagle fairing guards, and I therefore believe that all the then-available, usable equipment that was either in my possession or under my control on February 13, 2004, and the die cast eagle fairing guard parts that were in my possession or under my control on that date have either been picked up by and are in the possession of Jeffrey Hoop or, with respect to the additional eagle fairing guard parts identified in paragraphs 11 and 12 above, are now available for pickup; and

14. That to the best of my knowledge, information and belief, Jeffrey Hoop now has in his possession all the equipment that I built and that currently exists for the purpose of die casting of the eagle-shaped fairing guards and for the preliminary finishing step of lift tab removal.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on  03-03-04                    _____
                                                            Mark R. Hoop

# Fine-Tech Tooling Inc.

230 Claremont Unit C • Cincinnati, Ohio 45218
Phone: (513) 761-1741 • Fax: (513) 761-1904
email: finetech@fuse.net

Chambers of Susan Dlott
829 Potter Stewart Courthouses
100 E. Fifth Street
Cinn, Ohio 45202

Date 02-15-04

Subject: Case Number 1:00-cv-869, reference court order

As ordered I did turn over the (equipment) which did include a Die Cast mold all related tooling and all Eagle fairing guards in my possession on 2-13-04.
On the date 2-14-04 I did search a second storage area previously not checked and did find additional eagle fairing guards. My council is out of town so I am sending notice to the courts of this discovery so as to comply with the order.
These additional Fairing guards will be made available for pick at the office of Alfred Mangels upon his return.

Sincerely,

Mark Hoop

EXHIBIT A