IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

FILED
JAMES BONINI
CLERK

04 APR 26 PM 1:25

DISTRICT COURT
SOU DIST OHIO
WEST DIV CINCINNATI

| | |
|---|---|
| Mark R. Hoop, et al., | ) |
| Plaintiffs, | ) Civil Action No. C-1-00-869 |
| v. | ) |
| Jeffrey W. Hoop, et al., | ) District Judge Susan J. Dlott |
| Defendants. | ) |

**REPLY TO DEFENDANTS' MEMORANDUM IN SUPPORT OF RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR AMENDMENT OF THE JUDGMENT**

Defendants' memorandum shows that even Defendants have misapprehended the law and the evidence applicable to the issues in this case. In that regard, it is worthy of note at the outset that Defendants have not questioned the listing of the undisputed facts as they were presented in Plaintiffs' memorandum in support of their motion. And by their silence with respect to those facts Defendants have implicitly acknowledged the accuracy of that listing. Moreover, Defendants have also not questioned or discussed even a single one of the many authorities that Plaintiffs had cited in support of their arguments in support of their motion. By their silence with respect to those authorities Defendants have implicitly acknowledged the applicability of those authorities to the points raised by Plaintiffs in support of their motion.

## I.
## THE COPYRIGHT AUTHORSHIP ISSUE

Defendants acknowledged in their memorandum, as they must, that the copyright laws do not protect ideas or concepts. And Defendants have admitted that they only had an idea

and concept when they stated in their Memorandum: "Mark and Lisa Hoop attempted to obtain copyright protection regarding *Jeffrey and Stephen Hoop's idea and concept*." (Defendants' Memorandum, page 1) (emphasis added). Additionally, the evidence adduced at trial clearly showed that Defendants themselves never even made a sketch of an eagle, let alone a drawing or any other representation corresponding with the copyrighted and patented eagle design. It is the authorship of the design that was copyrighted and patented that is at issue, and the evidence also showed that the sketches of eagles that Defendants gave to Plaintiffs were not drawn by either of the Defendants. Indeed, the testimony of Defendants' "expert," Mark Hershberger and that of Defendants unequivocally established that Mark Hershberger drew the sketches attributed to Defendants. If anyone was the author or inventor of the eagle sketches offered by Defendants, it was Mark Hershberger, not either of Jeffrey Hoop or Stephen Hoop, each of whom acknowledged that he had no drawing skills. But the Mark Hershberger designs were different from the patented and copyrighted design that was conceived and reduced to tangible form by Lisa and Mark Hoop. As testified to by Professor Hammond, Plaintiffs' expert witness, it was Lisa and Mark Hoop who provided substantive features that amounted to an original design, the design that was ultimately patented by both parties and copyrighted by Plaintiffs.

The evidence before the jury clearly showed that Defendants had arrived at a mere mental concept, a way station near the beginning of the path that extends from having an idea to making an invention. Defendants did not conceive a particular eagle design, only "an eagle." What was copyrighted and patented, however, was a particular eagle design, one that was not conceived either by Defendants or by their "expert."

The Defendants as well as the jury misapprehended the copyright authorship issues, and in reaching their conclusions the jury failed to apply the law to the uncontroverted evidence in accordance with the Court's instructions.

## II.
## THE PATENT INVENTORSHIP ISSUE

After correctly stating the law applicable to a determination of patent inventorship, Defendants proceeded to misapply that law in their own favor. Although Defendants refer repeatedly to their "conception," the fact remains, and the evidence shows, that Defendants did not conceive the patented invention, which is the ornamental eagle design as set forth in each of the patents in issue. In that regard, and as noted earlier herein, Defendants have acknowledged that all they had was an idea or a concept. It was an incomplete idea or concept because they had no eagle design of their own – they had to go to Mark Hershberger to even get a sketch of an eagle.

Alternatively, even if Defendants' idea or concept were to be considered to be complete as including the Mark Hershberger-drawn sketches, it was of a different ornamental eagle design than the one that was patented. And it was of a design that the evidence showed was invented by Mark Hershberger, a person who is not named as an inventor on Defendants' patent, and not a design invented by either of the Defendants. The operative terms in the case law authorities cited by Plaintiffs in their supporting memorandum and discussing inventorship are "the patented design," and that patented design was conceived and reduced to practice by Plaintiffs, not by either of the Defendants alone or together, and not by Mark Hershberger. The evidence at the trial clearly showed that neither of Defendants conceived the ornamental eagle design that was the patented subject matter. In fact, the Defendants did not conceive any eagle design. Their idea or concept was of a fairing guard in the form of an undefined eagle, and they left it to Mark Hershberger to come up with an eagle design.

By Defendants' reasoning, any of an infinite number of eagle designs would have fallen within their broad "concept" of an eagle-shaped fairing guard. And further by Defendants' reasoning, as to each and every one of that infinite number of eagle designs Defendants would have

been the inventors, regardless of who it was that actually arrived at a particular and specific eagle design. That reasoning is fallacious. In fact, such a proposition is preposterous as it would have the effect of permitting the patenting of an idea or a concept, which the case law authorities clearly and unequivocally say is not permissible.

### III.
### THE PATENT INFRINGEMENT DAMAGES ISSUE

Because Defendants are not the true inventors of the patented ornamental design, as noted above, their patent is invalid. *See, e.g., Jamesbury Corp. v. United States*, 518 F.2d 1384 (Ct. Cl. 1975). And because it is invalid, Defendants' patent cannot be infringed. Therefore, Defendants' patent cannot be the basis for an award of patent infringement damages, and the jury's award of damages on that basis is clearly erroneous.

### IV.
### THE CONFIDENTIAL DISCLOSURE AGREEMENTS

Defendants have conceded the correctness of Plaintiffs' position with respect to the confidential disclosure agreements, which contain no assignment by Plaintiffs of any of their intellectual property rights and which include no transfer of property rights in any equipment incident to the production or manufacture of eagle design fairing guards.

### V.
### THE CONTRACT ISSUES

In connection with the contract issues discussed in detail in Plaintiff's memorandum in support of their motion, Defendants have attempted to finesse Plaintiffs' arguments. Defendants

-4-

have taken the bizarre and unsupported position that there was a contract between Plaintiffs and Defendants, but that that the contract could only be breached by Plaintiffs, not by Defendants. ("The jury determined that Mark Hoop breached his contract with Jeffrey and Stephen Hoop. It did not and *could not have found a breach of contract by Jeffrey and Stephen Hoop in this civil action.*" Defendants' Reply, page 4) (emphasis added). The incorrectness of that position is clearly apparent and it defies logic. And along with the other positions taken by Defendants in their response, it is utterly devoid of any case law support.

## VI.
## THE CONVERSION ISSUES

Both the jury and the Defendants appear to have assumed that the die casting equipment produced by Mark Hoop was the property of Defendants. But the evidence clearly showed that Defendants never fully performed their obligations by paying Mark Hoop for his services in developing, producing, and successfully demonstrating the operability of the equipment that was the subject of the contractual relationship. By not having paid the costs for producing the equipment, Defendants did not own it, nor were they entitled to possess it until payment in full had been made, as was implicitly agreed to by all the parties at the inception of the eagle fairing guard project. Consequently, there was no conversion by Plaintiffs of any property owned by Defendants.

## CONCLUSION

Without addressing a single one of the many relevant case law authorities cited by Plaintiffs in their supporting memorandum, Defendants have, in effect, acknowledged the applicability of those authorities to the issues in this case. Defendants' memorandum in support of their response to Plaintiffs' motion can be summarized as merely "the jury was correct, don't bother

us with contrary arguments." Defendants have dodged the issues by not confronting the support for Plaintiffs' arguments, thereby acknowledging the weakness of and lack of substantive support for their own arguments. And Defendants have not cited any authorities in support of their arguments and positions. The jury's incorrect conclusions regarding inventorship and ownership have infected each of the other determinations reached by the jury and reflected in their verdict. Clearly, the jury's verdict is not supported by the law or by the uncontradicted evidence, and therefore judgment as a matter of law in favor of Plaintiffs as to all the issues in this case is warranted and is respectfully requested.

Respectfully submitted,

Alfred J. Mangels (0015981)
4729 Cornell Road
Cincinnati, Ohio 45241
Tel.: (513) 469-0470


Timothy A. Magee (0066023)
347 N. Main Street, Suite #3
Bowling Green, Ohio 43402
(419) 353-1856

Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing REPLY TO DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR AMENDMENT OF THE JUDGMENT was served upon trial counsel for Defendants this 26th day of April 2004, by first-class mail, postage prepaid, addressed to:

Stella B. House, Esq.
STELLA B. HOUSE, ATTORNEY-AT-LAW, P.S.C.
Post Office Box 422
Manchester, Kentucky 40962-0422

April 26, 2004
_____
Date

_____
Alfred J. Mangels
Trial Attorney for Plaintiffs