IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mark R. Hoop *et al.* | : | |
| | : | Case No. C-1-00-869 |
| Plaintiffs/ | : | |
| Counterclaim Defendants | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING |
| | : | PLAINTIFFS' MOTION FOR |
| Jeffrey W. Hoop *et al.* | : | JUDGMENT AS A MATTER OF |
| | : | LAW, AMENDMENT OF THE |
| Defendants/ | : | JUDGMENT OR A NEW TRIAL |
| Counterclaim Plaintiffs | : | |

This matter is before the Court on Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Amendment of the Judgment. (Doc. #126.) For the following reasons, the Court **DENIES** the motion.

**I.    FACTUAL BACKGROUND**

In the late 1990s, Plaintiffs Mark R. Hoop ("Mark"), his former spouse Lisa J. Hoop ("Lisa"), and Mark's cousins, Defendants Jeffrey W. Hoop ("Jeff") and Stephen E. Hoop ("Steve"), each were involved in making motorcycle fairing guards shaped like eagles. Jeff and Steve came up with the idea of making eagle-shaped fairing guards, Lisa rendered drawings of potential designs of the guards, and Mark built a die for casting the guards. Jeff and Steve used photographs of a sample cast from that die to apply for a patent on November 18, 1999. On March 28, 2000, Lisa and Mark filed their own application for a patent for an identical design of the eagle-shaped fairing guards. Jeff and Steve's design patent issued on August 1, 2000, and

Lisa and Mark's design patent issued on September 26, 2000. Additionally, in the spring of 2000, Lisa registered a copyright for a line drawing of a "Flying Eagle" (VAu 490-992), and Lisa and Mark registered a copyright for a three-dimensional sculpture of a "Flying Eagle" (VAu 494-540).

Later that year, Mark and Lisa filed suit against Jeff and Steve, bringing patent, copyright and various state law claims and requesting monetary, injunctive and declaratory relief. Jeff and Steve counterclaimed for patent infringement, conversion and breach of contract and requested monetary, injunctive and declaratory relief as to the validity and ownership of Mark and Lisa's patent and copyrights. On February 28, 2001, after a hearing on Jeff and Steve's motion for a preliminary injunction, the Court enjoined Mark and Lisa from infringing Jeff and Steve's patent. (Doc. #27.) Mark and Lisa appealed this order, and the Federal Circuit Court of Appeals affirmed. (Doc. #38.) The matter was tried to a jury on February 2, 3, 5, 10 and 11, 2004. The Court denied the parties' motions for judgment as a matter of law, and the jury considered the parties' claims.

The jury found for Jeff and Steve on most issues. The jury found that Jeff and Steve's patent was valid and that Jeff and Steve were entitled to $10,800 for Mark's infringement of the patent.[1] The jury found that Lisa was not the sole author of the line drawing of the eagle at which copyright No. Vau 490-992 was directed and that Lisa and Mark were not the sole authors of the sculpture at which copyright No. Vau 494-540 was directed. While the jury found that Lisa and Mark had each breached a confidential disclosure agreement that he or she had with Jeff and Steve, it found that Jeff and Steve were not entitled to monetary damages on those

---

[1] Mark had stipulated that if Jeff and Steve's patent were valid, he had infringed it.

breaches. However, on findings that Mark contracted with Jeff and Steve to build a die to cast the fairing guards, that Mark had breached that contract, and that Jeff and Steve had substantially performed their duties under that contract at the time of the breach, the jury awarded Jeff and Steve $318,250 in damages for breach of contract. The jury also found that Mark had converted property of Jeff and Steve and that Jeff and Steve were entitled to $51,317 as a result. Finally, the jury found that Lisa was not entitled to recover any funds for services rendered but that Mark was entitled to recover $36,000 in quantum meruit for services that he performed for Jeff and Steve's benefit but for which he had not been paid.

Pursuant to Federal Rule of Civil Procedure 50(b), Lisa and Mark now renew their motion for judgment as a matter of law on the patent, copyright, and quantum meruit issues only, enumerating in their written motion the particular "judgments" that they request. (See doc. #126.) Alternatively, pursuant to Rule 59(e), they request that the judgment be amended to reflect the conclusions embodied in these particular "judgments." In the alternative, they request a new trial on all issues in this case pursuant to Rule 59(a).

## II.    STANDARDS FOR MOTIONS FOR JUDGMENT AS A MATTER OF LAW, MOTIONS TO AMEND, AND MOTIONS FOR A NEW TRIAL

### A.    Motions for Judgment as a Matter of Law

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). In entertaining a Rule 50 motion, "the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." Id. at 150. The Supreme Court has instructed further, "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" Id. at 151 (citation omitted).

### B.    Motions to Alter or Amend the Judgment

Rule 59(e) permits a district court to alter or amend a judgment after its entry. See 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995). "Pursuant to Rule 59(e), there are three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or to prevent manifest injustice." Berridge v. Heiser, 993 F. Supp. 1136, 1146-47 (S.D. Ohio 1997). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." 11 Wright et al. § 2810.1. Lisa and Mark do not cite any change in law, new evidence, or clear error of law in the Court's evidentiary rulings or instructions. Instead, they request amendment of the judgment "to obtain a just result in accordance with the proper application of the law to the evidence." (Doc. #126 at 17.) Construing this request as invoking the grounds of preventing manifest injustice, the Court finds that Lisa and Mark's motion to alter or amend the judgment as superfluous, since this standard is higher than that of Rule 50(a) and Lisa and Mark ask for amendment of the judgment on the same issues on which they move for judgment as a matter of law.

### C.    Motion for a New Trial

Lisa and Mark also move for a new trial on all issues. Rule 59(a) permits the Court to grant a new trial in an action tried to a jury if "the verdict is against the weight of the evidence, [] the damages are excessive, or [], for other reasons, the trial was not fair to the party moving." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). See Fed. R. Civ. P. 59(a) ("A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the court of the United States."). Additionally, motions under Rule 59(a) "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Id. See also 11 Wright et al. § 2805.

### III.    ANALYSIS

#### A.    Copyright Ownership

Lisa and Mark argue that the jury's conclusions that Lisa is not the sole author of the line drawing at which copyright No. Vau 490-992 is directed and that Lisa and Mark are not the sole authors of the sculpture at which copyright No. Vau 494-540 is directed are incorrect. They contend that the jury must have either misunderstood the concept of copyright authorship or incorrectly concluded that the works at issue were works made for hire. On Lisa and Mark's request, the Court instructed the jury on the meaning of work made for hire. The jury could not reasonably have concluded that the registered works were works made for hire because there was no writing to that effect and Jeff and Steve conceded that Lisa and Mark were not their employees. See 17 U.S.C. § 101 (work is work made for hire where either 1) the work is prepared by an employee within the scope of his or her employment or 2) both the work is

specially ordered or commissioned for use in one of several categories and the parties agree in a written instrument signed by them that the work shall be considered a work made for hire).

However, the jury may reasonably have concluded that Lisa was not the author of the registered line drawing and that Lisa and Mark were not the authors of the registered sculpture because those works were not original. As the Court instructed the jury, providing sketches or supervision is not sufficient to make one an author or joint author. See Banctraining Video Sys. v. First Am. Corp., No. 91-5340, 1992 WL 42345, at **3 (6th Cir. March 3, 1992) (per curiam) (citing cases); Instructions to the Jury ("Instructions") at 34, "Author" – Defined. In order to prevail on their copyright infringement claims, however, Lisa and Mark also needed to prove[2] that the work in which they claimed a copyright was original in ways that were not trivial. The jury may reasonably have concluded that the differences between the sketches provided to Lisa and Mark by Jeff or Steve and the designs for which Lisa and Mark sought copyright protection were trivial. As there thus existed a legally sufficient evidentiary basis for a reasonable jury to find that Lisa was not the sole author of the registered line drawing and that Lisa and Mark were not the sole authors of the registered sculpture, Lisa and Mark are not entitled to judgment as a matter of law. Additionally, the Court finds that the jury's verdict on copyright authorship was not so against the weight of the evidence as to merit a new trial.

**B.     Patent Claims**

Next, Lisa and Mark challenge both the jury's verdict on patent inventorship and its award of damages on Jeff and Mark's patent infringement claim.

---

[2] Lisa and Mark's filing of a certificate of registration created a rebuttable presumption of the validity of their copyrights and of the facts contained in the certificates regarding ownership. 17 U.S.C. § 410(c). However, Jeff and Steve presented evidence that tended to rebut that presumption.

### 1. Inventorship

Lisa and Mark contend that they are entitled to judgment as a matter of law or a new trial on the patent inventorship issue. They argue that neither Jeff nor Steve can be the authors of the patented design because Jeff and Steve's friend Mark Hershberger drew the sketches on which it was based and his sketches were of a different design than that developed by Lisa and Mark and patented by the parties. As the Court instructed the jury, an inventor is the person or persons who conceived the patented invention. See Hoop v. Hoop, 279 F.3d 1004, 1007 (Fed. Cir. 2002). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation . . . . Thus, the test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention . . . ." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994). The inventor may utilize the services and ideas of others to help him perfect the invention without losing his right to a patent and without those who help him becoming inventors under the law. See C.R. Bard, Inc. v. M3 Sys., 157 F.3d 1340, 1352 (Fed. Cir. 1998).

The jury might reasonably have concluded that Mr. Hershberger was someone whose "services and ideas" Jeff and Steve used to "perfect the invention" of the eagle fairing guard design. The testimony of Jeff and Mr. Hershberger suggested that Jeff and Steve directed Mr. Hershberger with respect to drawing the design. The jury may reasonably have drawn a similar conclusion regarding Lisa's and Mark's work on the project. Jeff testified that he requested Lisa to make adjustments to her drawing on several occasions, including to remove the eagle's tail, a detail that Mark and Lisa emphasize as a key difference between Mr. Hershberger's drawing and

Lisa's drawing.  The evidence showed that Mark merely used his technical expertise to turn the drawing that Lisa rendered under the direction of Jeff and Steve into a workable three-dimensional form.  As there thus existed a legally sufficient evidentiary basis for a reasonable jury to find for Jeff and Steve on the patent inventorship and validity issues, Mark and Lisa are not entitled to judgment as a matter of law.  Likewise, the jury's verdict on these issues was not so against the weight of the evidence as to merit a new trial.

### 2.     Patent infringement damages

Mark also contends that the jury's award of damages on Jeff and Steve's patent infringement claim is "flawed."  (Doc. #126 at 7.)  In seeking damages as a result of patent infringement, the patent holder may attempt to demonstrate that he suffered actual damages in the form of lost profits as a result of sales by the infringer, or he may seek a reasonable royalty.  See Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119 (Fed. Cir. 2003).  To recover lost profits, a patent holder must show with reasonable probability that but for the infringement, he would have made the additional profits enjoyed by the infringer.  See id. at 1122.  Mark posits that the jury's $10,800 award must be based on evidence that Mark sold 120 sets of the fairing guards and that $90 was the average selling price of the sets.  (Doc. #126 at 7.)  The award is thus incorrect, argues Mark, because 1) Jeff and Steve made no showing that they would have made the sales that Mark did, and 2) the $10,800 calculation did not take into account the cost of producing each set.

Mark's first argument is to no avail.  He points to Jeff's testimony that Jeff and Steve abandoned their own efforts at producing and selling fairing guards and never sold any of the parts that they did produce as evidence that "they would not have made the sales that Mark Hoop

made." (Id. at 9.)  However, Jeff testified that he and Steve abandoned their production efforts prior to obtaining satisfactory parts because Lisa and Mark filed suit against them, bringing the attendant costs of defending a lawsuit.  Moreover, by the time suit was filed, Jeff and Steve knew that Mark and Lisa had patented the eagle fairing guard design, raising questions about the wisdom of going forward with production and marketing efforts.  Given that Mark and Lisa had a patent and filed suit against Jeff and Steve, Jeff and Steve should not be penalized for not demonstrating the ability to sell the article bearing the patented design.  Thus, in this case, Mark's success in selling the fairing guard sets is sufficient evidence that, but for Mark's infringement, Jeff and Steve might have sold at least as many sets as Mark did.  See Oiness v. Walgreen Co., 88 F.3d 1025, 1029-31 (Fed. Cir. 1996) (although jury award of lost profits founded on number of defendant's stores and amount of floor space presumably devoted to sale of article in each store was based on insubstantial evidence, jury properly could have awarded lost profits in the amount of profits on defendant's actual sales).

     Likewise, Mark's argument that the jury failed to account for costs in reaching its damages award does not provide a basis for a new trial.  While Mark's theory on how the jury arrived at a dollar amount may be a reasonable one, it is not the only reasonable interpretation of how the jury reached its decision.  There was evidence presented at trial that Mark had substantially more than 120 sets of fairing guards produced, and thus the jury may reasonably have concluded that Mark sold more than 120 sets, taken the cost of production into account, and arrived at the $10,800 award.  As the jury heard somewhat conflicting evidence as to the cost of production of each set, it is difficult to conclude what evidence of costs the jury chose to take

into account. The jury's award of damages on Jeff and Steve's patent infringement claim was therefore not so against the weight of the evidence or so excessive as to merit a new trial.

C.     **Breach of Disclosure Agreements**

Lisa and Mark also argue that the jury's findings that Lisa and Mark breached their confidential disclosure agreements with Jeff and Steve should be vacated and a new trial granted. Citing Ohio law to the effect that "damages are an essential element of a plaintiff's claim for breach of contract," Anchor v. O'Toole, 94 F.3d 1014, 1020 (6th Cir. 1996) (citing Donor v. Snapp, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994)), Lisa and Mark contend that the jury must have misunderstood the law and instructions when it found that they breached their confidential disclosure agreements but found no damages.

To prove breach of contract under Ohio law, a party must establish: 1) the existence of a binding contract or agreement, 2) the party's performance of its own contractual obligations, 3) the defendant's failure to fulfill – i.e., breach of – its contractual obligations without legal excuse 4) resulting damages by the plaintiff. Laurent v. Flood Data Servs., Inc., 766 N.E.2d 221, 225 (Ohio Ct. App. 2001). At trial, Lisa and Mark did not dispute the existence of the confidential disclosure agreements or that Jeff and Steve had performed their duties under those agreements. The verdict form thus asked the jury whether Jeff and Steve had proven the remaining elements of their breach of contract claims: whether Mark and Lisa had breached the confidential disclosure agreements and whether Jeff and Steve suffered damages as a result. There is nothing inconsistent or unreasonable about the jury's conclusions that Jeff and Steve had proven the former element but not the latter.[3]

---

[3]Since Lisa and Mark did not object to those aspects of the instructions that relate to this breach of contract claim, Federal Rule of Civil Procedure 51(d)(2) prohibits them from now

### D.     Breach of Contract to Build the Die

Mark also asks for a new trial on Jeff and Steve's claim that Mark breached a contract to build a die for casting eagle-shaped fairing guards.

#### 1.     Elements of Breach

First, Mark argues that Jeff and Steve's breach of contract claim must fail because Jeff and Steve failed to show that there was a meeting of the minds between them and Mark and what the terms of the contract were.  Mark's undisputed testimony however, showed that Mark, Jeff and Steve agreed that Mark would build a die for Jeff and Steve, Jeff and Steve would pay necessary expenses, and Jeff and Steve would pay Mark for his time upon his production of a working die.

Mark next argues that he cannot be liable to Jeff and Steve for breach of contract because an essential element of a breach of contract claim is that the non-breaching parties performed their obligations under the contract and the jury necessarily found that Jeff and Steve did not perform when it found that they failed to pay Mark $36,000 that they owed him for his work. While concluding that Mark worked on the die for the benefit of Jeff and Steve without being paid the full value of his time, however, the jury also reasonably could have concluded that under the terms of the contract, Jeff and Steve did not need to pay Mark until he tendered a die to them.  Undisputedly, Mark retained the die and refused to provide it to Jeff or Steve.  In concluding that such a failure to tender the die amounted to a breach of the contract, the jury may have considered evidence that Mark continually raised the price of his services and thus found that the payments made by Jeff and Steve were sufficient to constitute performance under

---

assigning error to those instructions unless the instructions contained a plain error affecting substantial rights.  Lisa and Mark do not attempt to demonstrate such an error.

the contract. Thus, the jury's finding that Mark performed services for Jeff and Steve for which he was not paid is not necessarily inconsistent with a conclusion that Jeff and Steve performed their obligations under their contract with Mark.

### 2.   Damages award on breach of contract

Mark also argues that the jury's $318,250 damages award on the breach of contract claim is not based on substantial evidence. First, he argues that the loss of any profits that Jeff and Steve might have realized but did not is a result not of any action by Mark, but the refusal of Jeff and Steve to deal further with Mark, specifically their failure to respond to his counterproposal to their proposed Manufacturing Agreement, and their own voluntary abandonment of efforts to make and sell the fairing guards. However, Jeff's and Steve's rights under the contract to build the die are not affected by their failure to deal with Mark with respect to manufacturing efforts going forward. Additionally, as discussed supra, the jury might reasonably have concluded that Jeff and Steve abandoned their production and sales efforts because Mark obtained a patent and sued them, not because they are simply "[q]uitters" who "should not be rewarded," as Plaintiffs' memorandum suggests. (Doc. # 126 at 14.)

Mark also argues that the lost profits award is impermissibly based on speculation, since the only testimony relating to potential lost profits was that of Jeff, whom Mark characterizes as an interested observer. While the jury was instructed to consider witnesses' interests in the outcome in the case in evaluating the credibility of their testimony, it was certainly entitled to consider testimony by interested witnesses. Under Ohio law, to establish an entitlement to lost profits for breach of contract, a plaintiff must demonstrate that the lost profits were 1) within the contemplation of the parties at the time the contract was made, 2) the probable result of the

breach of contract, and 3) not remote and speculative and may be shown with reasonable certainty. See Anchor, 94 F.3d at 1020 (citing Arthur Young & Co. v. Kelly, 623 N.E.2d 1303, 1308 (Ohio Ct. App. 1993)). However, future profits need not be established with absolute certainty. See id. at 1021. Mark cites Anchor to suggest that lost profits must be established through more sophisticated means than Jeff and Steve employed here, such as expert testimony, market surveys and analysis, and business records of similar enterprises. See id. In Anchor, however, the plaintiffs failed to meet their burden because they presented *no* evidence that the relevant enterprise would make a profit in the future, and other witnesses testified that they could not predict whether the enterprise would ever be profitable. See id. Here, Jeff and Steve presented evidence, in the form of Jeff's testimony, that they would have successfully marketed a certain number of eagle fairing guards if Mark had delivered a workable die. The jury may have credited Jeff's testimony and reasonably concluded, in light of Jeff's connections to other motorcycle enthusiasts, that Jeff's predictions had evidentiary value. Mark's success in selling eagle fairing guards also gave credence to Jeff's testimony that there was a market for the guards. Additionally, the jury's award fell far short of Jeff's estimates that he and Steve might have had annual profits on the sale of the fairing guards in the millions of dollars. The jury's conclusions on the breach of contract claim was not so against the weight of the evidence, nor was the award so excessive, as to merit a new trial.

### E. Conversion

Finally, Mark argues that he is entitled to a new trial on Jeff and Steve's conversion claim. Mark contends that he could not be liable to Jeff or Steve for converting the die and other equipment used to manufacture eagle fairing guards because that equipment never belonged to

Jeff or Steve since they never paid for it. Ohio law defines conversion as "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." Zacchini v. Scripps-Howard Broad. Co., 351 N.E.2d 454, 456 (Ohio 1976), rev'd on other grounds, 433 U.S. 562 (1977). While the jury concluded that Mark performed $36,000 worth of services for the benefit of Jeff and Steve but for which he was not paid, the jury also concluded that Mark breached the contract to build a die, presumably by not tendering the die to Jeff and Steve. Regardless of whether Jeff and Steve had yet paid for the die in full, they provided partial payment for a die that was built for them to their specifications. Thus, the jury reasonably could have concluded that the die belonged to Jeff and Steve, rather than Mark, and that by refusing to turn over the die and using it to produce parts to sell for his own profit, Mark converted Jeff and Steve's property.

In support of his argument for a new trial on the conversion claim, Mark cites Ohio Revised Code sections 1302.67 and 1302.77 for propositions that he did not raise either before the jury or in the drafting of jury instructions. Section 1302.67 states that a party to a contract for the sale of goods may demand adequate assurance of due performance and take the failure to provide such assurance within a reasonable time as a repudiation of the contract when reasonable grounds for insecurity arise with respect to the performance of the other party to the contract. Section 1302.77 provides that a seller of goods may withhold delivery if a buyer fails to make payment due on or before delivery or repudiates with respect to a part or a whole of the contract. Because Mark did not request the jury to be instructed on the propositions set forth in these sections, he must demonstrate plain error affecting substantial rights in the failure to give such instructions. Fed. R. Civ. P. 51(d)(2). He makes no argument that the Court so erred.

14

Additionally, the Court finds that any error in the failure to instruct the jury on these points of law was harmless because the jury reasonably might have concluded that Mark did not have reasonable ground for insecurity concerning the performance of Jeff and Steve or that Jeff and Steve had paid Mark a sufficient amount of money such that the die was theirs. For these reasons, the Court will not grant a new trial on the conversion issues.

IV.     **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Amendment of the Judgment. (Doc. #126.)

IT IS SO ORDERED.

                                            ___s/Susan J. Dlott_____
                                            Susan J. Dlott
                                            United States District Judge