```
 1                UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF OHIO

 3                      WESTERN DIVISION

 4                         - - -

 5   MARK HOOP, et al.,         :  CIVIL ACTION 1:00cv869
                                :
 6                              :  Cincinnati, Ohio
              Plaintiff,        :  Monday, February 2, 2004
 7                              :
        -vs-                    :  Day 1 of trial
 8                              :
     JEFFREY HOOP, et al.,      :  Motion in limine
 9                              :
                                :
10            Defendant.        :  9:00 a.m.

11                         - - -

12                  EXCERPT OF PROCEEDINGS
          BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE
13
                           - - -
14
     For the Plaintiffs:    Alfred Mangels, Esq.
15                          4729 Cornell Road
                            Cincinnati, Ohio  45241
16
                            Timothy A. Magee, Esq.
17                          130 Sherman Drive
                            Findlay, OH  45840
18
     For the Defendants:    Stella B. House, Esq.
19                          Post Office Box 422
                            Manchester, Kentucky  40962
20

21
     Law Clerk:  Aly Stang
22   Courtroom Deputy:  Steve Snyder
     Court Reporter:  Betty Schwab
23

24

25
```

```
 1                    EXCERPT OF PROCEEDINGS
 2            THE COURT:  Are there any questions with regard
 3   to opening statements, what can be said?
 4            MR. MAGEE:  Well, Your Honor, there are two
 5   pending motions in limine.
 6            THE COURT:  Are those going to affect anything
 7   you were going to say in opening statements?
 8            MR. MAGEE:  I think potentially it's possible.
 9   We don't know what the defendant is going to say.
10            THE COURT:  You go first anyway.
11            MR. MANGELS:  Yes, I know.
12            MS. HOUSE:  It definitely could.
13            MR. MAGEE:  Because their motions are pretty core
14   issues that we could probably talk about.
15            MS. HOUSE:  Another thing that we wanted to bring
16   to the Court's attention or mention to the Court is, on the
17   fairing that is the physical exhibit there, of course we
18   did agree jointly to have a fairing as an exhibit, but we
19   did not realize that it would have a sort of an
20   advertisement or whatever for American Aesthetics on it.
21   And we will ask that be concealed or covered in some way.
22            MR. MAGEE:  Sure.
23            MR. MANGELS:  No objection.
24            THE COURT:  You've got to give me some clue as to
25   what you think is going to come up in opening statement
```

```
 1   that you might have a question about.
 2            MS. HOUSE:  We might want to talk about
 3   co-inventorship as one thing that would be a problem as far
 4   as what they're entitled to as far as damages, whether
 5   that's going to be limited to specifically what they
 6   requested in their prayer for relief or be something
 7   broader.
 8            THE COURT:  I think in opening they can argue --
 9   not argue.  I apologize.  I think in opening statement they
10   can say that's what we intend to prove.  Now, whether they
11   can prove it or not is something else.  But I guess they're
12   entitled to say that they believe that they are the
13   co-inventors of the fairing guard design.
14            MS. HOUSE:  But, Your Honor, our position is that
15   that was never pled in any of the pleadings, that there was
16   never any request in any of their prayers for relief that
17   they be deemed to be co-inventors, in other words,
18   Plaintiffs and Defendants as co-inventors.  And so my
19   motion basically is asking that that not be permissible,
20   because it was never pled.  And, as a matter of fact, when
21   they filed the second amended complaint and asked to add
22   that as a prayer for relief, the motion was denied.
23            MR. MANGELS:  Your Honor, I think it's probably
24   implicit, where each side is claiming to be the inventor,
25   the jury has the option of going either end or somewhere in
```

1   the middle if they wish.
2           THE COURT:  I think that makes sense.  Yes, I'm
3   going to allow it.
4           MR. MANGELS:  We filed two motions in limine
5   also, Your Honor, one directed to the preliminary
6   injunction.  We don't want the jury to hear anything about
7   that because it would prejudice them.
8           THE COURT:  Right.  I don't see any reason to
9   discuss that.
10          MR. MANGELS:  Also the fact that they had
11  initiated a vacation proceeding against our patent.  Again,
12  that has no bearing because the patent office has made no
13  decision.  They're deferring to the Court.
14          THE COURT:  Right.  I see no reason that would be
15  relevant either.
16          MR. MAGEE:  Last, Defendants also filed a motion
17  in limine as part of, well, as one motion regarding
18  discussion of a breach of contract.  I don't really see how
19  we cannot discuss that.  For one, they have their own
20  contract claim, and it's basically an essential element,
21  you know, what was the agreement between these people; who
22  was going to do what.
23          MR. MANGELS:  And -- excuse me, Your Honor -- but
24  the complaint also has a recitation of the fact that
25  neither Lisa Hoop nor Mark Hoop were fully compensated.

```
 1   That's in there, been in there from the beginning.
 2            THE COURT:  That's been in there from the
 3   beginning.  The breach of contract has not.  You may have a
 4   theory of quantum meruit.  But I don't think the breach of
 5   contract was pled in time for you to say that there is a
 6   breach of contract.  I think it's strictly a quantum meruit
 7   theory.  They can say they performed services.  They can
 8   testify they performed services and this was the charge
 9   what their service was, but there was no terms of the
10   contract.
11            MS. HOUSE:  And with regard to, I guess, what
12   they can argue or present in that area, part of my concern
13   was that it seemed like that their expert and also their
14   desire to use a lot of the Clairson exhibits and some of
15   those things might be to show what someone else would have
16   charged to do that kind of thing.  And in their prayer for
17   relief, you know, they specifically said, you know, Mark
18   said that he wanted compensation for his time and efforts.
19   And, you know, there was just specific language in their
20   prayer for relief, so --
21            THE COURT:  I'm not sure if comparable can be
22   relevant.
23            MS. HOUSE:  I don't think they are.
24            THE COURT:  I don't think they are, yes.  He can
25   testify what his standard price is, what his standard
```

1  hourly rate is or whatever.  But, when you get into
2  comparables, you would have the show that the services were
3  comparable, and it would be a lot more complicated.
4          MR. MANGELS:  Well, Your Honor, my expert is
5  going to be testifying to what the reasonable cost for one
6  of those devices is, the device that Mark had generated as
7  a result of his effort.
8          MS. HOUSE:  That's exactly what I'm saying, that
9  I don't think that's relevant in this particular case.
10         THE COURT:  Yes.  It may not be.  I don't know.
11         MS. STANG:  I didn't realize that's what those
12 exhibits were for.  I didn't understand the nature of them,
13 I guess.
14         MR. MANGELS:  It has to do with the extent of the
15 compensation to which Mark might be entitled as a result of
16 his efforts.
17         THE COURT:  Almost sounds like a Daubert issue as
18 to whether or not the person is entitled to testify what
19 his expertise is in the field, and I don't know what his
20 expertise is first of all.  You know, he's certainly going
21 to have to be voir dired on that.
22         MS. HOUSE:  Richard Luther, I think that's his
23 name, and I mean basically his statement or, you know,
24 report that was submitted just says, well, this is what it
25 would cost to do this; this is what it would cost to do

1   that.

2   THE COURT: There has got to be a foundation. If
3   he's opining, then he's got to be qualified as an expert.

4   MS. HOUSE: And, but I just don't think it's
5   relevant in this particular case, because what's relevant
6   is Mark's time and efforts. That's all he asked for in his
7   prayer for relief, which would have nothing to do with what
8   it might cost Mr. Luther or anyone else to do that kind of
9   thing.

10   THE COURT: Well, I don't think at this point it
11   can be referred to in opening statement, because I think
12   that's definitely an issue that's going to have to be
13   decided in the context of the evidence.

14                           * * *

15                      EXCERPT CONCLUDED

16

17

18                      C E R T I F I C A T E

19       I, Betty J. Schwab, the undersigned, do
20   hereby certify that the foregoing is a correct
21   transcript from the record of the proceedings in
22   the above-entitled matter.

23

24                              _____
25                              BETTY J. SCHWAB, RPR
                                Official Reporter