1          UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF OHIO

3               WESTERN DIVISION

4                   – – –

5  MARK HOOP, et al.,          :  CIVIL ACTION 1:00cv869
                               :
6                              :  Cincinnati, Ohio
          Plaintiff,           :  Wednesday, Feb. 11, 2004
7                              :
     –vs–                      :  Day 5 of trial
8                              :
   JEFFREY HOOP, et al.,       :  Judge's statement after verdict
9                              :  Defendants' Motion for
                               :   return of equipment
10            Defendant.       :

11                  – – –

12             EXCERPTS OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

13                  – – –

14
   For the Plaintiffs:   Alfred Mangels, Esq.
15                       4729 Cornell Road
                         Cincinnati, Ohio  45241
16
                         Timothy A. Magee, Esq.
17                       130 Sherman Drive
                         Findlay, OH  45840
18
   For the Defendants:   Stella B. House, Esq.
19                       Post Office Box 422
                         Manchester, Kentucky  40962
20

21
   Law Clerk:  Aly Stang
22  Courtroom Deputy:  Steve Snyder
   Court Reporter:  Betty Schwab
23

24

25

1          (After the verdict.)

2                              * * *

3          THE COURT:  Ladies and gentlemen, before

4   discharging you as jurors, since you've completed your

5   duties, I have a couple of comments to make.  I have a

6   standard speech I usually give, but this jury has really

7   gone above and beyond what our normal juries do.

8          What I usually talk about is the fact that we

9   have three branches of government, and, for the Executive

10  Branch, you vote for the president, and that's the end of

11  that.  For the Legislative Branch, you vote for your

12  congressman, and that's sort of the only way that you can

13  participate in that.  But in the Judicial system, your

14  being jurors really goes to the heart of this system.

15  Without you doing this job, we could not function.  It's

16  not always perfect justice, but it's the closest thing

17  we've come to in hundreds of years, I think.

18          I have a standard thing here where I always say

19  we thank you for having performed your duties in exemplary

20  fashion, but I must tell you this jury was one of the most

21  attentive, hard working juries I have ever seen.  And I am

22  eternally grateful to you, as are the parties and everyone

23  connected with the Court.

24          You are excused; however, if you have got just a

25  moment -- I know it's late -- but I'd just like to thank

1    you in person in the robing room if you would wait for me

2    for just a second.

3         (Jury excused from the courtroom at 7:20 p.m.)

4                              * * *

5         (7:45 p.m.)

6              THE COURT:  Ms. House, I understand you have a

7    motion to make.

8              MS. HOUSE:  Yes, Your Honor.  I wanted to make a

9    motion to allow my clients to pick up their equipment

10   immediately.  I wanted to see how we needed to go about

11   making arrangements for that.

12             THE COURT:  By "equipment" you mean the dies?

13             MS. HOUSE:  I mean the die, including without

14   limitation the mold shoes and insert steels.

15             THE COURT:  I'm having trouble hearing you.

16             MS. HOUSE:  The die, including without limitation

17   the mold shoes and insert steels, the bump die, the

18   multiple-station fixture, the contoured stamping die.

19             I don't think I understood that the two-station

20   trim die was ever built.  So, other than that, we'll just

21   ask for all eagle-design fairing guards in the possession

22   of Mark or Lisa Hoop.

23             And my clients just want me to ask about what

24   would be happening with Joint Exhibit 28 that has the

25   eagle-design fairing guards on it.

1          THE COURT:  Is that the --

2          MS. HOUSE:  The fairing.

3          THE COURT:  Whose exhibit was it?

4          MS. HOUSE:  That was Mark Hoop's exhibit.

5          THE COURT:  I guess we've got to wait and see if

6     there is an appeal, don't we, Steve?

7          We usually have to hold it if there's an appeal.

8          MS. HOUSE:  I thought that would probably be the

9     answer, but they wanted me to ask, so I just thought I

10    would.

11         THE COURT:  Mr. Mangels?

12         MR. MANGELS:  I think the motion is premature,

13    Your Honor.  We're going to be filing a motion for judgment

14    as a matter of law and for a new trial, so the matter has

15    not been finally determined yet, and I think it's premature

16    to require me to turn over the property at this particular

17    time, Your Honor.

18         MS. HOUSE:  Judge, if they're not inclined to

19    turn over the equipment at this particular time, then we

20    will request that they post a $49,500 cash bond to secure

21    the equipment, because we fear that it may be sabotaged or

22    damaged or that anything might happen in the interim.

23         THE COURT:  All right.  The Court will order a

24    bond.  If you don't -- I mean, you can turn over the

25    equipment or the Court will order a bond.

1          MR. MANGELS:  Could we have some time, Your

2     Honor, to digest all this?

3          MS. HOUSE:  Judge, my clients are anxious to get

4     the equipment.  Jeff's here from Florida.  He wants to take

5     the equipment back to Florida with him.  He's been here for

6     a long time away from his son whose birthday is coming up

7     soon.

8          THE COURT:  If they post a bond, though.

9          MS. HOUSE:  Right.  I understand that.  If they

10    assure us they're posting a bond, that's no problem.

11         THE COURT:  Yes.  I think, in order to protect

12    the property, I would have to have an answer if you're

13    going to post the bond or turn over the property.

14         MR. MAGEE:  Your Honor, can we just have a minute

15    so I can talk with them?

16         THE COURT:  Sure.

17         (Pause in proceedings while Mr. Magee and

18    Mr. Mangels and their clients leave the room and return.)

19         THE COURT:  Okay.

20         MR. MAGEE:  Your Honor, we're willing to

21    surrender the die.  I think our issue is here this motion,

22    I'm assuming, as based on the verdict is the breach of

23    contract claim.  We don't have a writing.  We never had a

24    writing here.  That's taking the jury's verdict that they

25    breached the contract, what's involved herein.  I mean,

1   obviously, the die.

2           THE COURT:  Right.

3           MR. MAGEE:  But it's never been defined what

4   everything else is.  We'll turn over the die.  That's fine.

5   But they're asking for things that --

6           (Construction noise.)

7           THE COURT:  Wait.  Why don't you come up here?

8   Have you guys got a cell phone?  Maybe call Rick

9   and tell them to stop it again.

10          MS. HOUSE:  Judge, I don't have the exhibits in

11  front of me, but basically I looked at Mark Hoop's invoice,

12  which was Joint Exhibit 22 and Joint Exhibit 23, which sets

13  forth the tooling costs, and also JX 35, which was the

14  manufacturing agreement.  And basically, as the Court will

15  note, Mark's document -- I'm sorry.  It's PX 23, not JX

16  23 -- the total tooling cost was $49,500, and the --

17          THE COURT:  The jury awarded -- I'm not quite

18  sure -- 51.

19          MS. HOUSE:  The jury, well, actually what we were

20  going by was the jury awarded Mark the $36,000, which was

21  this figure here, and the additional $13,000 that had

22  already been paid would add up to $49,000.  And there was a

23  lot of question throughout whether it was $36,000 or 36

24  five.  So the 500 is, you know -- so basically it sounded

25  like to me that the jury was including all the equipment

1   when the jury made that ruling.

2          MR. MANGELS:  Your Honor, Jeff Hoop testified

3   that, when mention was made of this additional equipment,

4   he had testified, well, we never asked for that; we just

5   asked them to make the die.  So the property involved

6   should really be only the die itself and none of this other

7   equipment.

8          MS. HOUSE:  Another problem is, of course, that

9   this equipment is used to manufacture this product.

10          THE COURT:  Right.  It would be useless.

11          MR. MANGELS:  No, it would not be useless, Your

12   Honor.  It is a matter of not being comprehended by the

13   parties at the time this agreement had been entered into.

14   They wanted to have him prove that he could mold it, and,

15   in order to mold it, he would have to make a die, but, in

16   order to prove it moldable, he would not have made a

17   secondary handling tool.  He did that for his own

18   invention.  Jeff Hoop testified we never asked him to do

19   that.  That's testimony in the record.  And now they're

20   asking these folks for things that they say, well, we never

21   asked them to make those.

22          MS. HOUSE:  Well, Judge, the thing I got from the

23   testimony was that the multiple-station fixture was

24   specifically to hold those eagle-design fairing guards

25   while the tabs are ground off them.  I think that that is

1   of this, the subsequent dies, everything else, I mean

2   that's just absurd.

3           MS. HOUSE:  Judge, in the conversion section, if

4   you remember reading from the jury instructions, it

5   specifically says the die and the equipment necessary to

6   manufacture the eagle fairing related equipment to

7   manufacture the eagle fairing guards.  And that was defined

8   as the equipment, and the jury did find that Mark Hoop had

9   converted the personal property of my client.

10          THE COURT:  I'm going to order that either all of

11  the equipment be turned over or that you post a bond in the

12  amount of 49 five immediately.

13          MR. MAGEE:  I would just -- okay.  I understand

14  your ruling.  I'm not going to argue.

15          MS. HOUSE:  May we get details on where we can

16  pick up the equipment?

17          MR. MAGEE:  We may post the bond.  We need to

18  talk a little more, Your Honor.

19          THE COURT:  The bond needs to be posted tomorrow

20  by the close of business.  By 5 p.m. tomorrow, either the

21  equipment -- you need to make arrangements with --

22          MS. HOUSE:  Could the equipment all be at

23  Accro-Cast and we could just pick it all up there, since we

24  know the die is there?

25          THE COURT:  Do they know how to get ahold of you?

1   equipment that has been used to infringe this patent, and I

2   think it's equipment that my clients are entitled to.

3          The contoured stamping die is the equipment that

4   is used to put the foam tape on the back of the

5   eagle-design fairing guards.  Again, that is equipment that

6   Mark Hoop used to infringe on the patent, and I believe my

7   clients are entitled to it.

8          The two-station trim die, I understand, doesn't

9   exist.  Is that correct?

10          MR. MAGEE:  That's my understanding.

11          MR. MANGELS:  No, it doesn't exist.

12          MS. HOUSE:  And that's actually the major pieces

13   of property listed on here valued at $9,000.  The other two

14   are only listed as the multiple-station fixture, 3,000, and

15   the contoured stamping die, 15 hundred.

16          Of course there is a bump die which you heard

17   testimony about, and that is, the original die, it was

18   necessary to bump the part for the motor cycles 1996 and

19   above and make them fit on the fairings after that date.

20   So certainly we'll be requesting that.

21          MR. MAGEE:  Your Honor, my understanding what the

22   jury came back with is a breach of contract claim.  They

23   paid $13,000 for a die.  That's what they're saying.  We

24   didn't produce the die, according to the jury.  And they

25   performed their end of the bargain, the 24,000.  The rest

1        MS. HOUSE:  Yes.

2        THE COURT:  You need to make arrangements with

3   the defendants to turn the equipment over tomorrow or post

4   a bond in the amount of $49,500 with the clerk of the

5   court's office by 5 p.m. tomorrow.

6        Anything further?

7        MS. HOUSE:  Nothing further, Your Honor.  Thank

8   you very much.

9               COURT ADJOURNED AT 7:50 P.M.

10

11

12               C E R T I F I C A T E

13        I, Betty J. Schwab, the undersigned, do

14   hereby certify that the foregoing is a correct

15   transcript from the record of the proceedings in

16   the above-entitled matter.

17

18               *Betty J. Schwab*
        BETTY J. SCHWAB, RPR
19        Official Reporter

20

21

22

23

24

25